**Annie BLACKWELL, Plaintiff,**

v.

**PROFESSIONAL BUSINESS SERVICES OF GEORGIA, INC., Defendant.**

Civ. A. No. C81–105A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 14, 1981.

**536**

Barbara L. Smith, Conyers, Ga., for plaintiff.

Kehir & Baker, Atlanta, Ga., for defendant.

ORDER

TIDWELL, District Judge.

The above-styled action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, [hereinafter FDCPA or "the Act"] is before the court on the parties' cross-motions for summary judgment. The facts that form the basis of this litigation are not in dispute. The plaintiff allegedly incurred a debt to Doctor's Hospital, and the defendant attempted to collect this debt by contacting the plaintiff on a single occasion. This contact was made by form letter, which read:

> FINAL NOTICE BEFORE LEGAL REFERRAL. YOUR DELINQUENT ACCOUNT may be scheduled for referral to an attorney for action. You may, therefore, be responsible for additional costs prior and subsequent to a resulting judgement [sic]. With judgement, creditor's attorney can garnishee wages and/or attach tangible and real property.

On the reverse of this form letter, the following language appears, in smaller type:

> Unless you notify this office in 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid.

> IF you notify this office in writing in 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of the judgment against you and mail a copy of such judgment or verification.

> IF you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

This form letter was the only contact between the plaintiff and the defendant.

In the plaintiff's motion for partial summary judgment, she asserts that the defendant's communication with her violated the provisions of FDCPA. She contends, first, that the defendant's form letter constituted a "false representation of . . . the

character, amount, or legal status of any debt ...." under § 1692e(2)(A); second, that the validation notice required by § 1692g was improper in form and wording; third, that the validation notice misrepresented the legal status of the plaintiff's alleged debt in violation of § 1692e(2)(A). The defendant for its part denies that its form letter was violative of the Act in any of the particulars set forth by the plaintiff.

The plaintiff first asserts that the language in the defendant's form letter misleads the debtor as to the legal status of the debt, in that it gives the impression that the debtor must act immediately to avoid judgment, that judgment is inevitable, and that with judgment the creditor can garnish wages or attach property. While the defendant prefaced this language with the qualifier that the account "may" be referred to an attorney and such consequences "may" result, the plaintiff suggests that the printing of the words "FINAL NOTICE BEFORE LEGAL REFERRAL" in large type negates the effect of the word "may".

It is clear that this language does not, on its face, amount to a "false representation of ... the ... legal status" of the debt within the meaning of § 1692e(2)(A). Nothing in the statement, particularly when prefaced by the cautionary "may", can be pointed out as untrue. The plaintiff, however, contends that the form is deceptive or misleading in its total effect or impression. In this contention, the plaintiff appears to be relying on the first paragraph of § 1692e, which states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section
....

The legislative history makes it clear that other practices than those specifically forbidden may be found to be in violation of the Act:

In addition to these specific prohibitions, this bill prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed. Sen.Rep.No. 95–382, 95th Cong., 1st Sess., *reprinted in* [1977] U.S. Code Cong. & Ad.News 1695, 1698.

■ In order to determine whether a statement is false, deceptive or misleading within the general meaning of the Act, the plaintiff urges the adoption of the standard employed in *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864 (D.N.D.1980), which found a violation of the Act where "debtors on the low side of reasonable capacity read into the message oppressiveness, falsehood or threat." This court is not bound by the decisions of other district courts, *see Dean v. Timpson Independent School District,* 486 F.Supp. 302, 310 (E.D.Tex.1979), and declines to adopt this novel standard. Rather, in the absence of relevant case law in this circuit, the court will look to the standard adopted by the Fifth Circuit in an analogous situation.

In *Bustamante v. First Federal Savings & Loan Assn.,* 619 F.2d 360 (5th Cir. 1980), the Fifth Circuit was called upon to determine the meaning of "materiality" under § 1635 of the Truth-in-Lending Act. No definition was provided in the Act, the regulations, or its legislative history. Reviewing the purposes of Truth-in-Lending legislation, the Court of Appeals found that the purpose of that section was to enable the consumer to make an informed decision in obtaining credit, and that an objective standard should be applied, based on "what a reasonable consumer would find significant in deciding whether to use credit." 619 F.2d at 364.

■ In the instant case, a similar problem exists in defining "deceptive or misleading". Nothing in the Act or its legislative history provides any guidance to the meaning of these terms in the context of § 1692e. The FDCPA, like the Truth-in-Lending Act, was designed to safeguard consumers in their dealings with business; here, as in *Bustamante,* the particular safeguard at issue is the text or wording of the

form provided to the consumer. Accordingly, in determining whether a violation of § 1692e exists, the court will look to whether a reasonable consumer would be deceived or misled by particular language.

■ Applying this standard, which is both less stringent and more widely used than the "something less than reasonable consumer" standard proposed by the plaintiff, the court finds that the language employed in the defendant's form letter communication would not convey such an impression to the reasonable consumer as to constitute a deceptive or misleading statement within the meaning of § 1692e.

The plaintiff's second assertion is that the validation notice required by § 1692g was improper in form and wording, in that it was placed on the back of the notice, with no reference on the front of the form to the message on the reverse, and that it was in smaller print than the body of the notice. The plaintiff cites in support of this reading of the statute *Ost v. Collection Bureau, Inc.*, 493 F.Supp. 701 (D.N.D.1980), which found that a similar form of notice "point[ed] to a deliberate policy on the part of the collector to evade the spirit of the notice statute and mislead the debtor . . ." 493 F.Supp. at 703.

■ In declining to follow this decision, the court observes that, unlike other consumer protection legislation, § 1692g does not mandate a particular format, type size, location or "conspicuous" position for the validation notice, but rather looks entirely to its content. The plaintiff has cited no regulation requiring such a practice of the defendant. Nor does § 1692g contain the language found in § 1692e, permitting the courts to find a violation not specifically provided for by the Act. The form of validation notice employed by the defendant therefore does not violate § 1692g by reason of its type size, location, or lack of reference to that location.

The plaintiff's final contention is that mention of "judgment" in the validation notice, where no judgment exists, constitutes a misrepresentation of the legal status of the alleged debt under § 1692e(2)(A). § 1692g provides in pertinent part:

> . . . a debt collector shall . . . send the consumer a written notice containing—
> . . . (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . . .

The plaintiff cites an informal opinion letter from an FTC attorney, attached as Exhibit 2 to the plaintiff's motion, to the effect that reference to a judgment where none exists constitutes a "misleading representation." This letter closes with the statement that "[t]hese views are informal in nature and accordingly are not binding on the Commission . . ."

While no Fifth Circuit case has dealt with the problem of unofficial FTC opinions on the FDCPA, the Third Circuit has applied a Fifth Circuit case dealing with an unofficial Federal Reserve Board interpretation to the question of an informal staff opinion on the scope of the FDCPA. In *Staub v. Harris*, 626 F.2d 275 (3rd Cir. 1980), the court first noted § 1692*l*(d) of the Act, which provides:

> Neither the Commission nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter.

The legislative history's discussion of administrative enforcement clarified this provision:

> Because the committee regards this as comprehensive legislation which fully addresses the problem of collection abuses, the administrative agencies are specifically prohibited from issuing additional rules or regulations applicable to persons covered by this legislation.

The Third Circuit then observed:

> It is a "general proposition that considerable respect is due 'the interpretation given [a] . . . statute by the officers

or agency charged with its administration,'" *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 556 [100 S.Ct. 790, 63 L.Ed.2d 22] .... but the letter received by [the plaintiffs] is an informal opinion, denominated as such. Such unofficial interpretations are "merely ... suggestion[s] that the stated interpretation[s are] the 'more likely' meaning of the statute." *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740, 747 (5th Cir. 1973). Although the FTC informal opinion should be given some weight by this court, *Philbeck v. Timmers Chevrolet, Inc.,* 499 F.2d 971, 976 (5th Cir. 1974), it is by no means binding, *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d at 747, and we decline to follow it. 626 F.2d at 279.

■ The mention of a "judgment" in the form refers to an alternative confirmation to be sent to the debtor in lieu of a verification of debt. The language complained of is taken from the statute itself. Accordingly, and in light of the limited powers accorded the FTC under the FDCPA, this court declines to follow the informal staff opinion of the FTC and finds that mention of judgment in the verification notice does not violate § 1692e(2)(A).

The plaintiff also contends that, even if use of language referring to judgment is proper, use of the definite article "the" instead of the indefinite article "a" before the word "judgment" must of necessity refer to a particular judgment, and thus misleads the debtor as to the presence of a judgment where none exists. The court finds that a verification notice differing by a single definite article from the language of the statute does not in itself constitute a false representation of the legal status of the debt under § 1692(2)(A).

Accordingly, the plaintiff's motion for partial summary judgment is denied, and the defendant's motion for summary judgment is granted and sustained.