Juanita Ann **WRIGHT**

v.

The **CREDIT BUREAU OF GEORGIA, INCORPORATED, and Martha Phillips, in her capacity as agent for The Credit Bureau of Georgia, Incorporated.**

Civ. A. No. C81–2338A.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 30, 1982.

Donald M. Coleman, Decatur, Ga., for plaintiff.

G. Lee Garrett, Jr. of Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

Plaintiff alleges in this action that the defendants have violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692*o*. The action is before the court on the defendants' motion for summary judgment, Rule 56, Fed.R.Civ.P., and the plaintiff's motion for partial summary judgment on the issue of liability. *Id.*

## I. *The FDCPA*

In response to widespread national concern over abuses by some debt collectors, Congress in 1977 enacted the FDCPA, which is designed "to eliminate abusive practices, not disadvantage ethical debt collectors, and promote consistent state action." S.Rep.No.382, 95th Cong., 1st Sess. 7, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1695, 1701. Among other things, the FDCPA expressly prohibits many harassing, deceptive, and unfair debt collection practices, including the use of obscene language or threats of violence, impersonation of government officials, misrepresentation of a consumer's legal rights, and simulation of court process. *Id.* at 4. Moreover,

> [i]n addition to [its] specific prohibitions, [the FDCPA] prohibits in general terms any harassing, unfair, or deceptive collection practice. This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.

*Id.* The FDCPA, like many other consumer protection acts, is "primarily self-enforcing." *Id.* at 5; *cf. McGowan v. King, Inc.,* 569 F.2d 845, 848 (5th Cir. 1976) (scheme of Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* is "to create a system of private attorneys general to aid its enforcement").

## II. *Summary Judgment*

 A party who moves for summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether a movant has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir. 1981). If the record presents factual issues, the court must deny the motion and proceed to trial. *Id.* Furthermore, the court may discover questions of material fact even though both parties, in support of cross-motions for summary judgment, have asserted that no such questions exist. *See Donovan v. District Lodge No. 100, IAM,* 666 F.2d 883, 886–87 (5th Cir. 1982); Wright, Miller and Cooper, *Federal Practice and Proce-*

*dure: Civil* § 2720. Thus, the court can resolve legal issues raised by the parties on cross-motions for summary judgment only if it has no doubt that the relevant facts are beyond dispute.

Rule 56 permits either party to move for summary judgment in his favor upon "all or any part" of the plaintiff's claims, Rule 56(a) and (b), and summary judgment therefore may be granted as to any one of several claims, *Moss v. Ward,* 450 F.Supp. 591, 594 (W.D.N.Y.1978). Although the court generally may not grant summary judgment on only one portion of a claim, *Bonda's Veevoederfabriek Provimi, B. V. v. Provimi, Inc.,* 425 F.Supp. 1034, 1036 (E.D.Wis.1976), in some cases summary judgment is proper for one or more distinct issues presented by one claim. *Barker v. Norman,* 651 F.2d 1107, 1123 (5th Cir. 1981).

Plaintiff asserts in this action that the defendants have violated three sections of the FDCPA. The court will treat each alleged violation as a separate claim. For the reasons that follow, the court will grant summary judgment for the defendants on two of the plaintiff's claims; as to the third claim, the court will grant in part and deny in part each party's motion.

### III. *Facts* [1]

Defendant Credit Bureau, Incorporated of Georgia (CBI) is a corporation composed of two divisions. One division is a consumer reporting agency, as that term is defined by 15 U.S.C. § 1681(a); [2] the second division is a debt collector, as defined in 15 U.S.C. § 1692a(6). The collection division sells its service, collection of money owed on delinquent accounts, to creditors for a percentage of the amount of the debt that CBI recovers. Defendant Martha Phillips, named by the plaintiff as a defendant in her capacity as an agent for CBI, is in reality Ms. Bea Bean (defendant Bean), a debt collector employed by CBI. The name "Martha Phillips" is merely a pseudonym, or "desk name," used by any female CBI employee assigned to make collections from debtors whose surnames begin with "W." This name is also used by CBI's computer, which prints the desk name on letters to those debtors.

Sometime before September 30, 1980, the Propes Furniture Company turned over to CBI an account in plaintiff Juanita Wright's name. The account showed a delinquent balance due of $173.74. CBI entered the account information into a computer, which automatically dispatched a form letter addressed to Ms. Wright containing the following information: [3]

Your account, as indicated above, has not been paid and has now been placed with this company for collection.

Payment in full must be received within five days. Otherwise further action will be taken.

To insure proper credit, it is necessary to return this notice with your payment in the enclosed envelope.

. . . .

1. This statement of facts shall serve, to the extent necessary, as the findings of fact required by Rules 52(a) and 49(b), Fed.R.Civ.P., in an order rendering judgment on the merits against a plaintiff. This statement of facts and the conclusions reached elsewhere in this order shall serve as the order required by Rule 56(d) in a case not fully adjudicated on motions for summary judgment, but shall not relieve the parties of the necessity of filing a proposed pretrial order.

2. A consumer reporting agency is defined as an agency that regularly compiles and evaluates credit information about consumers for the purpose of supplying third parties with a report of an individual consumer's credit history, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. 15 U.S.C. § 1681a(d) and (f). CBI has conceded that one of its divisions is such an agency, *compare* Statement of Material Facts as to Which Plaintiff Contends There Is No Genuine Issue to Be Tried at ¶ 1 *with* Defendants' Response to Plaintiff's Statement of Material Facts as to Which There Is No Genuine Issue to Be Tried at ¶ 1, but the record contains no specific descriptions of its consumer reporting activities.

3. The complaint and answer in this action indicate some dispute as to whether Ms. Wright received this letter. For the reasons stated *infra,* pp. 596–597 of this order, the court finds that the letter was both sent by CBI and received by Ms. Wright.

If you send us written notice within thirty days that this debt or any portion of this debt is incorrect, we will obtain verification of this debt and mail it to you. Also, upon receipt of your written request within thirty days, we will furnish you with the name and address of the original creditor if different from that shown.

If you do not notify us in writing within thirty days, we shall assume that the account, as shown, is correct.

Brief of Defendants in Support of Motion for Summary Judgment (Defendants' Brief), Exh. C; Statement of Material Facts As to Which Defendants Contend There is No Genuine Issue to Be Tried (Defendants' Statement of Undisputed Facts) at ¶ 7. This letter, like all similar letters sent by CBI to Ms. Wright, bore, in large print at the top of the page, the letterhead:

# CBI
### the credit bureau
### incorporated of georgia

The only indication that this letter was sent by CBI's collection division was the use of the name "CBI COLLECTIONS—ATLANTA" on the first line of the address that appeared in smaller print at the bottom of the page. A return envelope addressed to a post office box number, which represented a bank lock box account, accompanied the letter.

Ms. Wright received a total of three collection letters and discussed the debt with defendant Bean during four telephone calls between October 1980 and May 1981. In a telephone conversation on October 16, Ms. Wright stated that she would pay off the debt in installments. Defendant Bean maintains that in this and all other telephone conversations she

identified herself as Martha Phillips and explained that she was calling from the Credit Bureau in the Collection Department. She made no representations to Plaintiff concerning the nature of Credit Bureau's business other than to state that Credit Bureau had been retained by Propes Furniture Company to collect on Plaintiff's delinquent account.

Defendant's Statement of Undisputed Facts at ¶ 19. Ms. Wright does not directly dispute this assertion by defendants but does point out that

[e]ach time Defendant Bean spoke with plaintiff, she failed to inform plaintiff about the dual nature of Defendant CBI's business. Defendant did not explain to plaintiff that Defendant CBI was not acting in the capacity of a credit reporting agency in its effort to collect the disputed debt.

Statement of Material Facts As to Which Plaintiff Contends There Is No Genuine Issue to Be Tried (Plaintiff's Statement of Undisputed Facts) at ¶ 7.

On November 12, 1980, CBI received Ms. Wright's first installment, a money order sent by mail to CBI's bank lock box. Two more payments were received, on January 12 and February 10, 1981, by mail to the same box. Ms. Wright made only these three payments, totaling $37.00. In March 1981, CBI sent Ms. Wright a second letter, which stated

Your broken promises have convinced us that you deserve no further consideration in the above matter.

Therefore, five (5) days from this date, if the above account is not paid in full, we will recommend to our client that they refer to their attorney for immediate action.

Plaintiff's Amendment to Her Brief in Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Amendment), Exh. A. CBI's last letter to Ms. Wright was mailed in April 1981 and stated

This is our final notice to you before recommending that our client give the account to their attorney for legal action. Although it may cause you embarrassment, inconvenience, and further expense, we will do so if the entire balance is not in this office within the next five days.

To insure proper credit, please return this notice with your payment in the envelope enclosed.

Attend to it NOW—This is a FINAL NOTICE.

Plaintiff's Amendment, Exh. B. After a final telephone conversation on May 14, 1981, CBI closed the account and recorded the balance of $137.74 as uncollectible.

## IV. *The Parties' Contentions*

Ms. Wright alleges that she has suffered intense mental and emotional distress as the result of the collection efforts of CBI and defendant Bean and seeks statutory damages of $1,000, actual damages in an unspecified amount, attorney's fees, and costs. In the course of this litigation, Ms. Wright has asserted three separate violations of the FDCPA. First, in the Consolidated Status Report filed by the parties several months before Ms. Wright filed her motion for partial summary judgment, Ms. Wright contended that CBI failed to comply with the notice and validation of debt procedures mandated by 15 U.S.C. § 1692g. Although Ms. Wright has not argued this ground in support of her present motion, the defendants have responded to that contention in their motion for summary judgment and the court will therefore discuss the sufficiency of the plaintiff's section 1692g claim. Second, in support of her present motion, Ms. Wright contends that the defendants' use of the desk name "Martha Phillips" during telephone conversations constitutes the "placement of telephone calls without meaningful disclosure of the caller's identity," in violation of 15 U.S.C. § 1692d(6). Finally, Ms. Wright argues that CBI's deceptive use of the term "credit bureau" and statements made by defendant Bean to Ms. Wright constitute "false representation[s] or implication[s] that a debt collector operates or is employed by a consumer reporting agency," in violation of 15 U.S.C. § 1692e(10) and (16).

In support of their motion for summary judgment and in response to Ms. Wright's arguments, defendants assert (1) that Ms. Wright has conceded that the notice and validation procedures of section 1692g were followed, (2) that defendant Bean's use of a desk name does not violate the section 1692d(6) prohibition of anonymous telephone calls, and (3) that neither CBI's use of the term "credit bureau" nor defendant Bean's statements misrepresented CBI's operations or the nature of defendant Bean's collection efforts.

## V. *Notice and Validation of Debt*

Section 1692g(a) requires that a debt collector send to each consumer, within five days after its first contact with that consumer,[4] a written notice containing the amount of the debt, the name of the creditor to whom the debt is allegedly owed, and three notice statements that (1) outline the appropriate procedure for disputing the debt and (2) inform the consumer of the consequences of disputing or not disputing the debt within thirty days. Section 1692g(b) provides that if, within thirty days after receipt of the notice, a consumer in writing disputes the debt or requests certain information, the debt collector must cease collection efforts until the request has been complied with.

Plaintiff has not specified which of the two subsections the defendants have allegedly violated. The complaint alleges that the two letters sent in March and April 1981 were the "only written communication received by the plaintiff." Complaint at ¶ 12. Since neither of those letters contained the notice required by section 1692g(a) and since the plaintiff has alleged that her statements disputing the debt were oral, the court will presume, as have the defendants, that the plaintiff has raised only the factual question of whether notice was sent.

Defendants argue that any assertion that CBI did not send the proper notice has now been conceded through Ms. Wright's failure to contradict the defendants' statements that such a notice was sent. Local Court Rule 91.72 requires that every summary judgment motion be accompanied by

---

4. As the term is used in the FDCPA, "consumer" means someone obligated or allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3).

a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

Both of the parties attached to their motions for summary judgment the required statements of undisputed material facts. However, only the defendants submitted the required statement of controverted facts.

In their statement of undisputed material facts, the defendants assert that "[U]pon activation of the account on Plaintiff, form letter 1 containing validation information required by the [FDCPA] was sent to her at her residence," Defendants' Statement of Undisputed Facts at ¶ 7, and that "[u]pon receipt of form letter 1, Plaintiff telephoned the Credit Bureau on October 16, 1980 ...," *id.* at ¶ 10. The court agrees with defendants that under Local Court Rule 91.72 Ms. Wright's failure to controvert these assertions amounts to a concession that the required notice was both sent by the defendants and received by Ms. Wright. The court will therefore grant summary judgment for the defendants on the issue of whether they violated section 1692g.

## VI. *Defendants' Use of a Desk Name*

Section 1692d provides:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 . . . .

(6) Except as provided in section 1692b of this title, [which prohibits disclosure of a debt collector's identity in certain circumstances,] the placement of telephone calls without meaningful disclosure of the caller's identity.

The court agrees with the defendants that the use of a desk name is not a violation of this section.

Section 1692d is designed to prohibit all forms of harassment, oppression, and abuse by debt collectors; subsections (1) through (6) of that section contain specific instances of prohibited conduct. It would be inconsistent with the broad prohibition of the section to construe any one of the enumerated instances to forbid conduct that does not naturally tend to harass, oppress, or abuse. Although there are many ways that anonymous telephone calls may be used to harass consumers into cooperating with debt collectors, the use of an alias by an individual debt collector who otherwise accurately discloses the name of her employer can hardly be termed harassment, oppression, or abuse. Rather, the "meaningful disclosure" required by section 1692d(6) has been made if an individual debt collector who is employed by a debt collection company accurately discloses the name of her employer and the nature of her business and conceals no more than her real name.

Ms. Wright has adduced no evidence that defendant Bean failed to disclose that she was attempting to collect the debt as an employee of CBI. Nor does the record indicate that any statements made by defendant Bean while using her desk name tended to harass, oppress or abuse. The court will therefore grant summary judgment for the defendants on the issue of whether they violated section 1692d(6).

## VII. *Defendants' Use of the Term "Credit Bureau"*

Ms. Wright alleges that she agreed to make installment payments on the Propes Furniture account only because she perceived a threat by CBI to harm her credit rating. She testified in her deposition that

Like I say, I have a bad nerve condition and at that time, every time I would, you know, talk to Ms. Phillips or receive a letter, it would just upset me because at that time, I didn't know that she was not with the official Credit Bureau. I thought she was, you know—I really thought she was The Credit Bureau, where she could just run my credit down the drain.

She didn't let me know that she was a collection agency. She just said she was with The Credit Bureau and every time I received a letter or heard from her, I kind of got upset. I even thought about paying the money.

I started asking, "How am I going to pay it, because I don't want my credit to go bad?"

The source of the perceived threat, Ms. Wright alleges, was CBI's prominent use of the term "credit bureau" in its letterhead, the less noticeable identification of the collection division as the source of the collection letters, and defendant Bean's statements to Ms. Wright during telephone conversations.

Section 1692e provides

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

. . . .

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

This section, like section 1692d, states a broad prohibition of certain conduct, in this instance the use of false, deceptive, or misleading representations in the collection of any debt, and then supplies in subsections specific examples of the prohibited conduct.

It would be inconsistent to construe either subsection (10) or subsection (16) to forbid conduct by CBI that does not constitute a false, deceptive, or misleading representation.

Section 1692e(16) would doubtless prohibit defendant Bean or CBI from stating or implying that CBI operated a consumer reporting agency when in fact it did not. But that section cannot be reasonably construed to mean that CBI deceives or misleads consumers by using a name that truthfully implies that at least part of its business is consumer credit reporting. The court therefore holds that subsection (16) does not prohibit the use of the term "credit bureau" in CBI's name.

Ms. Wright's allegation of a violation of subsection (10) raises a close question. The court notes initially that subsection (10) is more specific than section 1692e's broad prohibition only in that it makes clear that "in connection with the collection of any debt" includes collection or attempted collection of a debt and the gathering of information about consumers. The remainder of subsection (10) merely restates the general section 1692e prohibition of false, deceptive, or misleading representations. Since the parties have not disputed that CBI's contacts with Ms. Wright were made in connection with the collection of the Propes Furniture account, the court will treat her subsection (10) claim as the equivalent of a section 1692e claim.

Ms. Wright argues that it is deceptive for CBI to imply, however truthfully, that it is a consumer reporting agency and at the same time to not disclose that its business is composed of two separate and independent divisions, one a consumer reporting agency and the other a debt collection service. Ms. Wright thus contends that section 1692e requires CBI to make no disclosure, even by implication, of the consumer reporting aspect of its business unless it clearly explains the relationship that aspect bears to its collection efforts, or otherwise dispels any false threat that a failure to pay a debt will result in harm to the consumer's credit rating. The court agrees.

The court notes initially that the appropriate test in FDCPA cases of the tendency of language to deceive is the subject of some dispute. The district court in *Bingham v. Collection Bureau, Inc.*, 505 F.Supp. 864 (D.N.D.1981), held that to determine whether a statement by a debt collector is false, deceptive, or misleading, the court "should look not to the most sophisticated readers but to the least," 505 F.Supp. at 870 (*citing Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961)), and therefore the court must find section 1692e violated if "debtors on the low side of reasonable capacity who read a given notice or hear a given statement read into the message oppressiveness, falsehood or threat." *Id.* at 871. Defendants urge this court to apply instead the standard announced in *Blackwell v. Professional Business Services*, 526 F.Supp. 535 (N.D.Ga.1981) (Tidwell, J.), in which the district court expressly rejected the *Bingham* test as too stringent, and held that a court must measure alleged violations of the FDCPA by looking to "whether a reasonable consumer would be deceived or mislead by particular language." *Id.* at 537–38.

This court concludes that in FDCPA cases the standard announced in *Bingham* is the appropriate measure of the tendency of language to deceive. First, although both the TILA and the FDCPA were designed to safeguard consumers in their dealings with business, the two acts address different problems and have different aims. The TILA was enacted to ensure that consumers are provided with specific details of loan terms to enable them to make informed decisions about borrowing. 619 F.2d at 364. Congress enacted the FDCPA not only to ensure that consumers receive information, but "to eliminate abusive collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA's purpose of protecting rather than merely informing is best served by a definition of "deceive" that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's letters and telephone calls.

Second, the court in *Blackwell* derived its reasonable consumer standard from *Busta-*

*mante v. First Federal Savings & Loan Ass'n*, 619 F.2d 360 (5th Cir. 1980), a case involving the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, in which the Fifth Circuit determined not whether particular statements tended to deceive, but whether certain required disclosures were "material." The *Bingham* standard, on the other hand, was drawn from cases in which federal courts had addressed, in actions brought under section five of the Federal Trade Commission Act, 15 U.S.C. § 45, the specific issue of whether particular language was false or deceptive. 505 F.Supp. at 870 (*citing FTC v. Standard Education Society*, 302 U.S. 112, 116, 58 S.Ct. 113, 115, 82 L.Ed. 141 (1937); *Exposition Press, Inc. v. FTC*, 295 F.2d at 873). The *Bingham* standard is thus more directly applicable to the question of whether a debt collector's statements tend to deceive.

Finally, in *Bustamante* the Fifth Circuit resolved a dispute as to whether the appropriate test of materiality was the objective, reasonable consumer standard asserted by the plaintiff in that case or the subjective standard proposed by the defendant. Thus, that court was not presented with a choice similar to the one this court now faces, that is, the choice between two objective standards that differ only as to the degree of sophistication to be attributed to reasonable consumers. Furthermore, the Fifth Circuit's reasoning in that case suggests that were it faced with the issue before this court, it would define "reasonable consumer" in a manner consistent with the *Bingham* standard. In choosing the objective standard that court stated, "To apply a subjective standard would be to protect only the sophisticated credit shopper; such a standard would fail to protect the unsophisticated or uneducated consumer, or redress violations of the [TILA] . . . ." 619 F.2d 364. Thus, regardless of whether the standard is expressed by the term "reasonable consumer" or the term "debtors on the low side of reasonable capacity," the court must gauge the tendency of a debt collector's language to deceive by use of a standard that protects "the unso-

phisticated." To the extent that the standard applied in *Blackwell* affords less stringent protection, *see* 526 F.Supp. at 538, it is rejected by this court.

█ Since the appropriate standard is an objective one, the tendency of the defendants' statements to deceive is not determined by the fact that Ms. Wright may have been deceived into thinking that she was dealing directly with a consumer reporting agency. Rather, the court must determine for itself whether an unsophisticated consumer on the "low side of reasonable capacity" would have been deceived. Applying that standard, the court holds that the letters sent by CBI to Ms. Wright violated section 1692e. The prominent use of CBI's name together with the less noticeable indication that the letters originated in its collection department would tend to cause an unsophisticated consumer to believe that she was dealing directly with one "credit bureau." Such a consumer could reasonably perceive a threat to her credit rating from such a letter. The evidence before the court in support of the parties' motions suggests that CBI's collection division does not as a matter of course inform the consumer reporting division of the results of attempts to collect debts. Nor does any evidence suggest that CBI intended to pass along such information concerning Ms. Wright. Thus, the letters implied a threat to harm Ms. Wright's credit rating, and because that harm was not in fact intended, the letters were deceptive. *Cf.* 15 U.S.C. § 1692e(5). Accordingly, the court will grant summary judgment for Ms. Wright on the issue of whether CBI's collection letters violated section 1692e.

█ The court declines to hold as a matter of law, however, that the statements made by defendant Bean during her telephone conversations with Ms. Wright would have similarly deceived an unsophisticated listener. Defendant Bean asserts that during each conversation she explained that she was with CBI's collection department. Ms. Wright contends that defendant Bean "didn't let me know that she was a collection agency." Deposition of J. Wright at

39. The court cannot determine from the evidence before it whether statements made by defendant Bean during their conversations may have tended to either reinforce or disclaim any implied threat communicated by her use of the term "credit bureau" in her statements. The issue of what defendant Bean said to Ms. Wright during their telephone conversations thus presents a question of fact that cannot be resolved on the present record. The court will therefore deny both parties' motions for summary judgment to the extent that they relate to the issue of whether defendant Bean's statements to Ms. Wright violated section 1692e.

### VIII. Summary of the Disposition of the Parties' Motions

For the reasons stated above, the court will grant summary judgment for the defendants as to Ms. Wright's claims that the defendants violated section 1692g and section 1692d(6) of the FDCPA. The court will grant summary judgment for Ms. Wright on her claim that the defendants' letters violated section 1692e of the FDCPA, but will deny summary judgment to both parties on the issue of whether defendant Bean's statements violated that section. There remain for trial the issues of (1) whether defendant Bean made false, deceptive, or misleading representations in connection with the collection of the debt Ms. Wright allegedly owed, and (2) the amount of relief to which Ms. Wright is entitled.

Accordingly, the plaintiff's motion for partial summary judgment on the issue of liability is GRANTED IN PART AND DENIED IN PART as set forth in this order. Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as set forth in this order.

IT IS SO ORDERED.