**In re Marie J. BELILE, Debtor.**

**Marie J. BELILE, Debtor–Plaintiff,**

**v.**

**ALLIED MEDICAL ACCOUNTS CONTROL ASSOCIATED BUREAUS, INC., Defendant.**

**Bankruptcy No. 97–10885DAS.**
**Adv. Nos. 97–0073DAS, 97–0075DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 9, 1997.

Joseph Diorio, Philadelphia, PA, for Debtor.

James V. Mathieu, Philadelphia, PA, for Defendant in Adversary No. 97–0075DAS.

Christine C. Shubert, Tabernacle, NJ, trustee.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA.

## *MEMORANDUM*

DAVID A. SCHOLL, Chief Judge.

### A. BACKGROUND/FACTS

Two out of three adversary proceedings brought by MARIE J. BELILE ("the Debtor") challenging collection practices of her creditors remain unresolved.[1] In one proceeding, Defendant WEST CAPITAL FINANCIAL SERVICES ("West"), has vigorously defended against the Debtor's claims, requiring a trial. In the other, the Debtor presented testimony merely to assess damages after a default by Co–Defendants ALLIED MEDICAL ACCOUNTS CONTROL and ASSOCIATED BUREAUS, INC. (collectively, "Associated," the parent company).

The Debtor has asserted three claims against West under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("the FDCPA"). The first two raise similar violations of 15 U.S.C. §§ 1692e(5), 1692e(10), which read as follows:

> **§ 1692e. False or misleading representations**
>
> A debt collector may not use any false deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .

---

1. We were advised by the Debtor's counsel that a third proceeding, in which Mack & Associates, Inc. was a defendant, was settled by a Stipulation which provided that the Debtor would be paid $2,500.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

These claims arise out of the last paragraph in a letter which reads as follows, with the underlined portions except the amount of the debt in red ink:

January 7, 1997
(SA02021S22)
MARIE J BELILE
1207 ARROTT ST
BISMARCK, ND 191245073

NOTICE

RE: *NORWEST CARD SERVICES*
*Account # 8276900058*

West Capital Financial Services Corp. has purchased the above referenced account. The amount owed is *$5,182.19*.

All previous attempts to resolve this account [sic] a voluntary basis have been unsuccessful. If you are unable to pay in full, West Capital Financial Services Corp. is willing to discuss a monthly payment arrangement.

*Failure to respond to this notice will result in your account being referred to the Legal Department,* with a recommendation to seek a civil judgment for the balance due.

Sincerely,

BRENDA ROBINSON X5014,C021

(800) 825–8131 Ext. 5014

Account Representative

NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION

The validation notice is included on the reverse side of the letter in black ink. In a deposition of Robert A. Clark, Esquire, the Debtor's vice-president and director of legal affairs, it was established that Clark heads West's Legal Department, to which the collection of the debt in issue was referred. However, Clark is not admitted to practice law in Pennsylvania and at no time made a referral of the matter to local Pennsylvania counsel.

The Debtor's final FDCPA claim arises from the fact that the notice of the Debtor's right to dispute the debt, as provided in 15 U.S.C. § 1692g, appears on the reverse side of the form. The Debtor claims that the red print on the form plus the placing of the validation notice on the reverse side "overshadows" the references to the validation procedure.

The Debtor also testified that she received what she considered an abusive telephone call from a creditor which may have been West. Clark admitted that West made at least one call to the Debtor. However, the Debtor was unable to identify the source of the call with any degree of precision. Therefore, we find that we cannot attribute this call to West.

The Debtor also invokes the following provision of the Pennsylvania Debt Collection Trade Practices Regulations ("PDCTPR"), 37 PA. CODE §§ 303.3(14), (21), (27): [2]

**§ 303.3. General provisions.**

While engaged in the collection of debts, it shall be an unfair or deceptive act or practice for a creditor or debt collector to engage in any of the following acts or practices:

. . .

(14) Representing, directly or by implication, that certain action will be taken if such action cannot legally be taken or if such action is not intended to be taken.

. . .

(21) Using profane, obscene, or other language the natural consequence of which is to abuse the hearer or reader.

. . .

(27) Otherwise abusing or harassing any person in connection with the collection of a debt....

The Debtor presented herself as a sensitive young woman who has undergone extensive psychiatric treatment for many years.

---

**2.** The Debtor attempted to invoke other provisions of PDCTPR, namely 37 PA. CODE §§ 303.3(3), (11), (18), in her Reply Brief. Since same were not pleaded or tried, we cannot consider these alleged violations.

She is presently assigned to a "resource counsellor," who was present in court to provide her moral support, by a mental health provider. She was allegedly particularly susceptible to trauma from collection practices because of her reportedly being subjected to a rape in 1994 just after a confrontation with a bill collector. The Debtor stated that she only read the red-ink portions of the letter and thought that it threatened her with immediate legal action which could result in jail. She also expressed a fear that someone would be sent to her residence to get her if she failed to pay. She immediately telephoned her resource counsellor regarding her concern over the letter upon its receipt and took it to the counsellor. Presumably, the latter allayed her fears.

## B. DISCUSSION

### 1. West's Letters Violated 15 U.S.C. §§ 1692e(5), 1692e(10).

Ample authority supports the Debtor's claim that the collection letter dispatched by West violated 15 U.S.C. §§ 1692e(5), 1692e(10). It is well-established that violations are assessed "from the perspective of the 'least sophisticated debtor.'" *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991). Thus, despite the substance of the letter as not particularly threatening, violent, or offensive to a trained professional person, the Debtor's untrained perspective must be considered. *See also Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir.1989) ("*Crossley II* "). The Debtor was not irrational in concluding that the letter threatened immediate action against her by West's Legal Department when she was unable to make payment.

However, since neither Clark nor any other employee of West was legally empowered to bring suit against the Debtor, the letter constituted a "false representation" or "deceptive means" to collect a debt, in violation of 15 U.S.C. § 1692e(10). It also threatened to take an action "that cannot legally be taken or that is not intended to be taken," in violation of 15 U.S.C. § 1692e(5). A violation of the PDCTPR provision comparable to § 1692e(5), 37 PA. CODE § 303.3(14), is also stated.

Numerous cases support the principle that threats of legal action by collection agencies unable to take such action because of the lack of a license to practice in the target debtor's jurisdiction constitutes a violation of at least one section of 15 U.S.C. § 1692e. *See Newman v. Checkrite California, Inc.*, 912 F.Supp. 1354, 1379–80 (E.D.Cal.1995) (§ 1692e(5) violation); *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1451–52 (D.Nev.1994) (violations of both §§ 1692(e)(5) and (10)); *United States v. National Financial Services, Inc.*, 820 F.Supp. 228, 235–36 (D.Md.1993), *aff'd*, 98 F.3d 131 (4th Cir.1996) (§ 1692e(10) violation); *Rosa v. Gaynor*, 784 F.Supp. 1, 4–5 (D.Conn.1989) (violation of at least one section of § 1692e found provable); and *Gaetano v. Payco of Wisconsin. Inc.*, 774 F.Supp. 1404, 1414–15 (D.Conn.1990) (violations of §§ 1692e(1), (2), (5), (9), (10), and 1692f(1) identified).

West argues that the letter does not threaten immediate action and that Clark's deposition testimony included a recitation that out of state counsel would have been engaged to pursue the Debtor, if appropriate. However, in light of the statement, in red ink, that the failure to respond would result in what appears to be an imminent referral to West's own Legal Department for action, the Debtor was not irrational in assuming that the letter constituted a statement that West itself intended to act immediately.

West cites *Knowles v. Credit Bureau of Rochester*, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992); and *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 178–79 (W.D.N.Y.1988), in support of its position that the letter does not violate § 1692e in any respect. However, neither of these cases, like the cases cited two paragraphs above, involved situations where unlicensed collectors dispatched letters indicating an intention to take immediate actions against debtors. In *Riveria*, the notice stated that the collector had "no choice but to advise" the creditor that "legal action may be necessary." 682 F.Supp. at 178. The *Knowles* letter stated that "failure to pay will leave our client no choice but to consider legal action." 1992 WL 131107, at *1.

While we are unwilling to commit to agreement with the *Knowles* and *Riveria* results, both of which emanated from the same courts on motions for summary judgment, we note that the language of the letters at issue in those cases make the potential for legal action appear less certain than the instant letter, which promises an immediate reference to West's Legal Department with a recommendation to commence suit. We find credible the instant Debtor's testimony, which has no counterpart in the *Knowles* and *Riveria* records, that she believed that legal action was inevitable and would be imminent. We therefore conclude that, under the present facts, the letter at issue violates 15 U.S.C. §§ 1692e(5) and 1692e(10).

2. *West's Letter Is Not Proven to Have Violated 15 U.S.C. § 1692g.*

 However, we are unable to sustain the Debtor's § 1692g claim. *Graziano* establishes that the validation notice required by that FDCPA provision must be written. 950 F.2d at 111–13. Several decisions establish that the notice " 'must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency.' " *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.1991), quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988).

In *Swanson*, the validation notice appeared on the front side of the form, but was "placed at the bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominates the center of the page." 869 F.2d at 1225–26. *Miller* involved, similar to the instant case, a notice on the reverse side of a letter referenced by language on the front. 943 F.2d at 483. However, the referencing language on the front appeared

> [a]t the very bottom of the page, in the smallest type to appear on the form (letters one-eighth of an inch high), [in] the statement, "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." The notice is printed in white against a red background. On the reverse of the document are four paragraphs print-

ed in gray ink. The last three paragraphs contain the validation notice—...

*Id. See also Rabideau v. Management Adjustment Bureau*, 805 F.Supp. 1086, 1089–91, 1093–94 (W.D.N.Y.1992) (reference to review the reverse side and validation notice in much smaller print than the rest of the letter); *Riveria, supra*, 682 F.Supp. at 176–77 (validation notice on back of form with no reference to it at all on the front); and *Ost v. Collection Bureau. Inc.*, 493 F.Supp. 701, 702–03 (D.N.D.1980) (same).

As the reprinting of the notice at page 4 *supra* accurately depicts, the reference to the reverse side of the instant letter is in print as large as any of the printing on the letter, albeit in black as opposed to red ink. The language of the validation notice on the back appears as large or nearly as large as the reference to the reverse side.

We are not prepared to say that the appearance of the validation notice on the reverse of a letter, with an adequately-sized reference to the notice on the front side, violates § 1692g. *See Blackwell v. Professional Business Services of Georgia, Inc.*, 526 F.Supp. 535, 538 (N.D.Ga.1981) (no violation of § 1692g found despite a lack of a reference to the reverse side where the validation notice appeared). Given the full context of the printed language on the instant letter, we cannot say that the red type of certain language "overshadowed" the validation notice. *See Higgins v. Capitol Credit Services, Inc.*, 762 F.Supp. 1128, 1131–35 (D.Del.1991) (validation notice on back of letter is not violative of § 1692g when the front side includes the reference "See Reverse"). We therefore conclude that the Debtor has proven West liable for only violations of §§ 1692e(5), (10) and 37 PA. CODE § 303.3(14), arising from a single letter.

3. *The Debtor Is Entitled to Actual Damages of $100 from Both Associated and West and Statutory Damages of $100 and $750 from Associated and West, respectively, under the FDCPA.*

The liability of West is therefore similar to that of Associated, regarding which liability is based upon a default arising from claims based upon a single letter sent to the same

Debtor. The allegedly-offending letter dispatched by Associated reads as follows:

# BWNCGGR# A 06/03/96
# 5D65MMGPFJHMH115#

MARIE J BELILE

1207 ARROTT ST # B5

RE: MERITCARE MEDICAL GROUP
Reference # :8802456

 8802456

 TOTAL AMOUNT DUE: $289.50

Dear MARIE J BELILE,

I am sure you would not tolerate your employer delaying delivery of your paycheck month after month. You expect prompt payment for your time and effort. And if you were not paid what you rightfully deserved, you would probably hire a lawyer.

Unfortunately, your lack of payment may place your creditor in a similar situation, MARIE BELILE.

You need to pay this delinquent bill now.

*WRITE YOUR REFERENCE NUMBER ON YOUR PAYMENT

 *MAKE IT PAYABLE TO: Allied Medical Accounts Control

 *MAIL IN THE ENCLOSED ENVELOPE–TODAY

Thank you for your immediate attention.

Sincerely,

MR SEGAL

Account Representative

800–788–8870

 * * * PLAN TO USE YOUR TAX REFUND TO PAY YOUR BALANCE * * *

The Associated letter caused the Debtor to become, in her terms, "pissed off," as opposed to being frightened, as she was by West's letter. Her anger was apparently generated by the snide smugness of the Associated letter and/or its claim to her hardearned tax refund. Associated did not contest the Debtor's averments that this letter violated 15 U.S.C. § 1692e(4), (5), and (10) and 37 PA. CODE §§ 303.3(14), (21), and (27).

■■■■ Before addressing the issue of damages common to both proceedings, we briefly address a procedural issue raised by West. West argues that the Debtor's failure to list her claim against it on Schedule "B" should bar her claim.[3] This argument is supported by the reasoning of *Larson v. Groos Bank, N.A.,* 204 B.R. 500, 502 (W.D.Tex.1996).

However, this claim is not supported by the instant record. West failed to place the Debtor's Schedule "B" into the record at the trial. *See In re Aughenbaugh,* 125 F.2d 887, 889 (3d Cir.1942); and *In re Nicolet, Inc.,* 80 B.R. 733, 742–43 (Bankr.E.D.Pa.1987) (contents of court files must be entered into evidence at trial to be considered part of the record). Second, we are not prepared to conclude that a debtor is bound by the valuation placed on those assets in the Schedules. *See In re B. Cohen & Sons Caterers, Inc.,* 97 B.R. 808, 817 (Bankr.E.D.Pa.), *aff'd in part & remanded in part,* 108 B.R. 482 (E.D.Pa. 1989), *appeal dismissed,* 908 F.2d 961 (3d Cir.1990), *clarified on remand,* 1990 WL 2632 (Bankr.E.D.Pa. January 11, 1990), *aff'd,* 124 B.R. 642 (E.D.Pa.), *aff'd,* 944 F.2d 896 (3d Cir.1991) (debtor not bound by value declarations on Schedules, although these declarations may be considered in reducing the damages claimed). Finally, we note that the *Larson* court's statement that "[p]roof of damages is an element of recovery for a claim," while perhaps applicable to the Fair Credit Reporting Act under which that debtor sued, is inapplicable to a FDCPA case or to the Debtor's claims under the PDCTPR. Both the FDCPA and the PDCTPR provide for both actual *and* statutory damages, with the latter arising even in the absence of any

---

3. We note that West admitted the Debtor's allegation that the proceeding against it is core, thus rendering us empowered to determine that proceeding. *See In re St. Mary Hospital,* 117 B.R. 125, 131 (Bankr.E.D.Pa.1990) (admission that a proceeding is core constitutes consent of the bankruptcy court to determine even a matter otherwise non-core).

*Compare Littles v. Lieberman,* 90 B.R. 700, 705 (E.D.Pa.1988) ("*Littles II*"); and *Crossley v. Lieberman,* 90 B.R. 682, 690–91 (E.D.Pa.1988) ("*Crossley I*"), *aff'd, Crossley II, supra* (collection suits are non-core, related proceedings). *But see In re Goldstein,* 201 B.R. 1, 3–7 (Bankr. D.Me.1996) (bankruptcy court lacks "related to" jurisdiction over a FDCPA proceeding).

actual damages. Therefore, we have jurisdiction to proceed to determine the damages due to the Debtor in light of the violations of the FDCPA and the PDCTPR by West and Associated.

■ The FDCPA provides as follows regarding damages collectible, in 15 U.S.C. § 1692k(a)(1), (a)(2)(A), (b)(1):

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; ...

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a) of this section, the court.shall consider, among other relevant factors—

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; ...

The Debtor has presented evidence of modest actual damages, in the nature of emotional distress arising from receipt of the letters in issue. *Compare Donahue v. NFS, Inc.,* 781 F.Supp. 188, 193–94 (W.D.N.Y.1991) ($100 awarded for debtor's fear generating physical repercussions); *Smith v. Law Offices of Mitchell N. Kay,* 124 B.R. 182 (D.Del. 1991) (jury award of $15,000 remitted to

$3,000; debtors suffered emotional distress, but court finds that much of it arose from personal circumstances of the debtors); *Littles II, supra,* 90 B.R. at 702–03, 717 ($1.00 actual damages awarded against creditor which sent an offensive letter which caused emotional distress to 57–year–old widow); *Crossley I, supra,* 90 B.R. at 685, 687, 697–98 ($1,000 actual damages awarded to a 70–year–old widow who was frightened into cashing her pension contribution to pay debt); and *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864, 875 (D.N.D.1981) ($1,000 actual damages awarded to the wife debtor whose psychological injury was supported by expert testimony; $100 award to the husband debtor for loss of his wife's consortium). In the context of the foregoing awards, fixing the Debtor's actual damages at $100 as to both West and Associated appears appropriate.

As this court stated in *In re Littles, supra,* 90 B.R. at 669, 680 (Bankr.E.D.Pa.1988), *modified, Littles II, supra:*

[t]here is ample authority for the principal that, even where the consumer suffers no actual damages at all, "additional damages" under 15 U.S.C. § 1692k(a)(2)(A) could be awarded. *See Baker [v. G.C. Services Corp.],* 677 F.2d [775,] at 780 [ (9th Cir.1982) ]; *Harvey [v. United Adjusters,],* 509 F.Supp. [1218,] at 1221–22 [ (D.Ore.1981) ]; and [*In re* ] *Scrimpsher,* 17 B.R. [999,] at 1016–17 [ (Bankr.N.D.N.Y.1982) ] .... the award of § 1692k(a)(2) damages even when no actual damages have been proven is a practical result, and one that we endorse, because some damages should perforce result to a consumer subjected to an actionable collection practice under the FDCPA....

An argument can be made, based upon the legislative history, that "[a] debt collector who violates the [FDCPA] *is* liable ... for additional damages," S. REP. No. 95–382, at 5 (July 27, 1977) (emphasis added), that statutory damages are appropriately imposed whenever a violation of the FDCPA is found. *See Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 63 (2nd Cir.1993) ("The FDCPA is a strict liability statute, *see Clo-*

*mon [v. Jackson ]*, 988 F.2d [1314,] at 1320 [ (2nd Cir.1993) ], . . .").

■ The FDCPA, at § 1692k(b)(1), goes on to recite relevant factors which the court should consider in awarding such damages. Both cases only involve one letter. However, each letter appears to be form letter, which was likely to have been sent to numerous consumers.

At this point we must observe the record made in the West matter suggests that the foregoing factors justify a more substantial statutory penalty against West than against Associates. The West letter, it will be recalled, was expressly found violative of §§ 1692e(5) and 1692e(10) by this court; the Associated letter was only found actionable by default. In his deposition Clark identified the letter sent to the Debtor as one of six to ten form letters used by West. From Clark's testimony of the large number of West's accounts, we infer that West sent this actionable letter to hundreds, perhaps thousands, of debtors from whom it attempted to make collections.

We also must observe that, like the debt collector at issue in *Crossley I, supra,* 90 B.R. at 698–99, West, far from admitting its error, vigorously opposed the Debtor at every turn. While the parties' counsel amicably resolved their cross-motions charging improper conduct of the other, this court cannot forget the extreme resistance of West to obviously-relevant discovery. As a result, while we will impose only $100 statutory damages on Associated, we will fix West's statutory damages at $750, reasonably close to the maximum awarded in similar circumstances in *Crossley I* which was specifically affirmed in *Crossley II.*

*4. The Debtor Is Entitled to $300 from Both Associated and West for Damages Under the PDCTPR.*

■ The final issue is the damages which must be imposed for the violation of 37 PA. CODE § 303.3(14) which we found on the part of each defendant. With respect to liability for violations of the PDCTPR, we previously held in *Littles I, supra,* 90 B.R. at 681; and *In re Jungkurth,* 74 B.R. 323, 335–36 (Bankr.E.D.Pa.1987), *aff'd sub nom. Jungkurth v. Eastern Financial Services,*

*Inc.,* 87 B.R. 333 (E.D.Pa.1988), that any violation of the PDCTPR is by its very nature a violation of the Pennsylvania Unfair Trade Practices and Consumer Law, 73 P.S. § 201–3.1 referenced by its generic designation as a law regulating Unfair and Deceptive Acts and Practices, or ("UDAP"). The section of UDAP providing for private actions, 73 P.S. § 201–9.2(a), states as follows:

§ 201–9.2 Private actions

(a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by [regulations promulgated pursuant to] section 3 of this act, may bring a private action in the court of common pleas of the county or judicial district in which the seller resides or has his principal place of business or is doing business or in which the transaction took place or where the buyer resides, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper (footnote omitted).

We also noted in *Littles I, supra,* 90 B.R. at 681, that "liability under the [PDCTPR] is, if anything, clearer than that under the FDCPA," a conclusion which we now support because 73 P.S. § 201–9.2(a) mandates that at least $100 be awarded for any violation of the PDCTPR. Further, we stated in *Littles I,* 90 B.R. at 681–82, that,

[a]s we noted in *In re Andrews,* 78 B.R. 78, 84–85 (Bankr.E.D.Pa.1987); and *In re Russell,* 72 B.R. 855, 872 (Bankr.E.D.Pa. 1987), awarding treble damages to consumers aggrieved by unfair trade practices is the normative judicial response under 73 P.S. § 201–9.2(a). We perceive no circumstances present here which should cause us to shrink from awarding Crossley a sum of treble her actual damages, or $300.00, under 73 P.S. § 201–9.2(a).

We conclude that it is appropriate to reach the same conclusion here and award the

Debtor $300 for violations of the PDCTPR against West and Associated.

We note that, in *Littles II, supra,* 90 B.R. at 707–10; and *Crossley I, supra,* 90 B.R. at 694–96, the district court refused to accept our recommendation to enter an award in favor of the *Crossley* plaintiff under the PDCTPR. However, this result arose from the district court's belief that it would be required to pass upon a legal issue which was then unresolved under Pennsylvania law, *i.e.,* whether attorneys, like the defendant in those proceedings, were chargeable with violations of the PDCTPR. As a result, the district court abstained from deciding the issue of PDCTPR liability. *Littles II, supra,* 90 B.R. at 709; and *Crossley I, supra,* 90 B.R. at 696.

There is no reason to reach the same result on the instant record. The defendants in these proceedings are collection agencies, not attorneys. Furthermore, in *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995), the Supreme Court has subsequently reaffirmed the *Littles* and *Crossley* holdings that attorneys are "debt collectors" under the FDCPA. It is doubtful whether, in light of this ruling, the Pennsylvania Supreme Court would decide otherwise as to the PDCTPR.

▮ We therefore conclude that West is liable to the Debtor for damages totalling $1,150 and that Associated's total liability to the Debtor is $500. *See also Carrigan v. Central Adjustment Bureau, Inc.,* 502 F.Supp. 468, 471 (N.D.Ga.1980); and *Scrimpsher, supra,* 17 B.R. at 1017 (FDCPA and state collection law remedies may properly be cumulated). Like the courts in *Carrigan, supra,* 502 F.Supp. at 471; and *Scrimpsher, supra,* 17 B.R. at 1017, we will not hesitate to cumulate FDCPA and state-law remedies. We also note that in *Carrigan,* as is the case here, the state remedies were in some respects more liberal than these provided by the FDCPA.

5. *The Debtor's Counsel Is Entitled to Attorney's Fees Which We Urge the Parties to Resolve.*

▮ We finally also observe that the Debtor's counsel is entitled to a reasonable attorney's fee for successfully prosecuting these actions, pursuant to both 15 U.S.C. § 1692k(a) and 73 P.S. § 201–9.2(a). *See Littles I, supra,* 90 B.R. at 682. As in those matters, West's "hyperbolic defenses ... will come home to roost." *Id.* We will, however, order the parties to attempt to resolve this issue between themselves before proceeding to require the production of elaborate fee applications and a hearing on this issue in the following order.

## C. CONCLUSION

An Order consistent with the conclusions reached in this Memorandum will be entered.

### ORDER

AND NOW, this 9th day of June, 1997, after trials of the issues remaining open in the respective above adversary proceedings on May 20, 1997, and upon consideration of the submissions of the parties, related principally to Adversary No. 97–0075DAS, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff, MARIE J. BELILE, and against the Defendants in Adversary No. 97–0073DAS, ALLIED MEDICAL ACCOUNTS CONTROL and ASSOCIATED BUREAUS, INC., jointly and severally, in the total amount of Five Hundred ($500.00) Dollars.

2. Judgment is entered in favor of the Plaintiff, MARIE J. BELILE, and against the Defendant in Adversary No. 97–0075DAS, WEST CAPITAL FINANCIAL SERVICES, in the total amount of Eleven Hundred and Fifty ($1,150.00) Dollars.

3. The parties are directed to confer to resolve the issue of attorney's fees due to the Debtor's counsel, but, if they are unable to do so, and the Debtor's counsel has made reasonable demands, the Debtor's counsel is accorded an opportunity to file Motions requesting attorney's fees and costs, including compensation on any necessary fee applications, in both cases, pursuant to 15 U.S.C.

§ 1692k(3) and 73 P.S. § 201–2(a), on or before July 11, 1997, said Motions to be procedurally in conformity with Local Bankruptcy Rule 2002.2; and *In re Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975).