Cirila C. RIVERIA, as Administratrix of the Estate of Victor Riveria, deceased, Plaintiff,

v.

MAB COLLECTIONS, INC., d/b/a Mercantile Adjustment Bureau, Defendant.

No. Civ. 87–1017L.

United States District Court, W.D. New York.

March 21, 1988.

Ruhi Maker, UAW, Legal Services Plan, Rochester, N.Y., for plaintiff.

Scott C. Smith, Weinstein, Vullo & Miller, Rochester, N.Y., for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Defendant MAB Collections, Inc., d/b/a Mercantile Adjustment Bureau ("MAB"), was engaged by the Radiologists of the University of Rochester ("Radiologists") to collect a debt for medical services rendered to Victor Riveria, now deceased. Plaintiff, Cirila C. Riveria, Victor Riveria's widow, was appointed administratrix of the estate on July 20, 1987. According to the records of Radiologists, services were rendered to decedent on October 16, 1985 and November 4, 1985 having a value of $168.00. After certain payments were made, a balance of $80.20 remained. Services were also rendered on August 21, 1985, October 16 and 18, 1985, and November 3, 1985 in the amount of $198.00 to which certain payments were applied leaving a balance of $31.96. On or about June 12, 1986, plaintiff received the first of fifteen communications from MAB concerning the collection of these debts. All notices were in writing and addressed to "VICTOR EST RIVERA (sic)."

Plaintiff's contention in this action is that MAB's communications constitute two violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et. seq. First, plaintiff alleges that letters sent by MAB did not contain a proper validation notice as required by 15 U.S.C. § 1692g. Second, plaintiff claims that defendant's letter of December 11, 1986 "threatened the possibility of legal action," a claimed violation of 15 U.S.C. § 1692e(2)(A), (5), and (10). Plaintiff seeks statutory damages in the amount of $1000 per violation, plus attorney's fees and costs. This matter is before the court on the parties' cross motions for summary judgment.

One defense set forth by MAB is that plaintiff does not have standing to bring this action because all of the letters were mailed to the estate prior to her appointment as administratrix. MAB claims its communications were intended solely for the estate of Victor Riveria. Hence, only an administratrix, properly appointed at the time the alleged violations occurred, may bring suit. Accordingly, before discussing the merits of this case, the court must address the issue of standing.

Civil liability arises under FDCPA whenever "*any* debt collector who fails to comply with *any* provision of this subchapter with respect to *any* person is liable to such person...." 15 U.S.C. § 1692k (emphasis added). The liability section is couched in the broadest possible language. Recovery is not limited to "consumers" as defined at 15 U.S.C. § 1692a(3) as "any natural person obligated or allegedly obligated to pay any debt." Any person who comes in contact with proscribed debt collection practices may bring a claim. *Whatley v. Universal Collection Bureau, Inc.,* 525 F.Supp. 1204, 1206 (N.D.Ga.1981).

Therefore, plaintiff, who as administratrix of the estate of Victor Riveria received MAB's collection letters, has standing to bring an action under any provision of 15 U.S.C. § 1692.

### Violation of § 1692g

Plaintiff's first claim is that the letters MAB sent to the estate of Victor Riveria did not contain a legally sufficient validation notice as required by 15 U.S.C. § 1692g. Section 1692g states:

"a debt collector shall ... send the consumer a written notice containing ... (3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector...."

Both parties agree that there is no question of fact relative to the "validation notice" provided in MAB's letters. MAB's notice is found on the reverse side of their computer generated letters. The typeset of the lettering is smaller than that on the face of the form. The validation notice is printed with gray ink as opposed to the blue and black ink utilized on the front. Also, there is no reference on the front of the letter that the "validation notice" appears on the rear.

While the statute sets forth the necessary content of the validation notice, it does not state the specific form that the notice shall take. MAB's position is that absent a specific statutory requirement, notice on the reverse of the document in the manner set out on MAB's form letter is sufficient and proper notice. MAB relies upon a Federal Trade Commission ("FTC") "proposed commentary" to the FDCPA. This document states that: "The FDCPA imposes no requirements as to the form, sequence, location, or typesize of the notice. However, an illegible notice does not comply with this provision." 51 Fed.Reg. 8019, 8028 (1986).

This "proposed commentary" is clearly not dispositive of the issue at hand. It merely states that the statute does not address the form of the notice and notes that illegible notices are unacceptable.

This commentary does not deal with the effect of "notices" on the reverse side of a debt collection communication. Furthermore, this commentary is merely a proposal. There is no indication that it has ever been released as a final commentary. Also, the commentary itself states that its contents are "only interpretations ... they are not trade rules or regulations, and therefore have no binding effect." 51 Fed. Reg. at 8020. Reliance by a party on this commentary does not prevent civil liability. 51 Fed.Reg. at 8029. Moreover, the FDCPA states: "neither the [FTC] nor any other agency referred to in subsection (b) of this section may promulgate trade regulation rules or other regulations with respect to the collection of debts by debt collectors as defined in this subchapter." 15 U.S.C. § 1692l (d). Thus, without clear guidance from the statute or the official regulations, we must turn to legislative intent to determine if defendant's notice violates the Act.

Congress' general intent in enacting the FDCPA was to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors. S.Rep. No. 95–382, 95th Cong., 1st Sess. 1 (1977). The legislation was necessary because debt collection abuse by third party debt collectors has become a widespread and serious national problem. *Id.* Collection abuse has taken many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process. Congress noted that unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them. *Id.*

Referring specifically to the validation notice, Congress has stated that the consumer has a right to dispute as well as obtain verification of their debts. The intent here is to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. S.Rep. No. 95–382, 95th Cong., 1st Sess. 4 (1977). The FDCPA requires debt collectors to include the validation notice in their initial communication with consumers. 15 U.S.C. § 1692g.

■ The issue is whether MAB complied with the intent of the Act when it placed a required validation notice on the reverse side of its form letter without any reference to the notice on the front of the letter. In my view, this strategic placement of the notice was such that, in effect, no notice was given at all.

When MAB placed the statutorily mandated language on the *reverse* side of its form, it frustrated Congressional intent. Without some clearly visible reference on the front of the form to the information that appears on the rear, the consumer is denied proper notice of his right to challenge the validity of the debt. *Ost v. Collection Bureau, Inc.*, 493 F.Supp. 701, 702–03 (D.N.D.1980).

For a notice to be sufficient it must be placed in such a way that a reasonable consumer would be aware of its message. Here, not only was the so-called notice placed on the back of the form, but there is no reference whatsoever on the front of the form to the notice. Furthermore, even if one by chance turned the form over, there is no language on the back to suggest that the printing on the reverse was a message directed to the debtor or recipient of the document. In addition, the smaller print size and the different color ink further diminish and weaken the effect of the "notice."

In an analogous case concerning the Truth and Lending Act, the Second Circuit has held that if a consumer notice is contained on the reverse side of a document, its existence must be clearly and concisely referenced on the front. *Gambardella v.* *G. Fox & Co.*, 716 F.2d 104, 111 (1983) (Consumer Credit–Truth and Lending Regulations require the producer of a document to state on its front: *"Notice:* See Reverse Side For Important Information").

In light of the rationale of the Second Circuit's *Gambardella* decision and the *Ost* case, *supra*, which I find persuasive, I decline to follow the decision in *Blackwell v. Professional Business Servers of Georgia, Inc.*, 526 F.Supp. 535 (N.D.Ga.1981), relied on by MAB, which held that a validation notice printed on the reverse side of a document was sufficient under § 1692g.

Other cases concerning the Truth and Lending Act clearly support my holding here that if a "notice" is required, it cannot be so hidden as to preclude all but the most persistent or lucky from finding it. *See Besaw v. General Finance Corporation of Georgia*, 693 F.2d 1032, 1034 (11th Cir. 1982); *Basham v. Finance America Corp.*, 583 F.2d 918, 926 (7th Cir.1978) (disclosures are to be made clearly and conspicuously); *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 249 (3d Cir.1980) (a consumer is not informed in a clear and conspicuous manner if he needs to locate a disclosure on a separate page); *Charles v. Krauss Co.*, 572 F.2d 544, 548 (5th Cir.1978) (the consumer should be able to look in one place for the required disclosures; when more than one page is involved "the possible concomitant of intentional concealment on the part of some unscrupulous" parties occurs); *Gennuso v. Commercial Bank & Trust Co.*, 566 F.2d 437, 443 (3d Cir.1977) (disclosure of terms shall not be stated, utilized, or placed so as to mislead or confuse consumers; placement of disclosures is to be considered along with their statement and use).

The requirement that a notice on the rear of the form be referenced on the front does not place an unnecessary burden on MAB. The lack of such a reference together with the actual form of disclosure in this case is a clear frustration of legislative intent. When MAB "hid" the validation notice on the reverse side of its form it violated 15 U.S.C. § 1692g.

### Violation of § 1692e(5)

█ Plaintiff's second claim is that MAB violated 15 U.S.C. § 1692e(2)(A), (5), and (10) by misrepresenting the imminence of legal action. Section 1692e(2)(A) states that "the false representation of the character, amount, or legal status of any debt" is a violation. There is no proof before the court that MAB falsely represented the character of the debt, the amount owed or its legal status.

Section 1692e(5) proscribes "the threat to take any action that cannot legally be taken or that is not intended to be taken." Plaintiff claims that the language found in MAB's letter of December 11, 1986 violated this section. This language reads

IT IS UNFORTUNATE THAT YOU DO NOT SEEM TO CARE, AND YOU LEAVE US NO CHOICE BUT TO ADVISE YOUR CREDITOR THAT YOU HAVE IGNORED OUR EFFORTS, AND THAT LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (SIC).

█ The plaintiff, at oral argument, suggested that the court should apply an "unsophisticated person" standard to determine whether the foregoing language violated the statute. This standard, however, does not apply to violations of subsection (5) of § 1692e. The court need only decide whether the alleged threatened actions could not legally be taken or were not intended to be taken. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1175 (11th Cir. 1985). MAB's letter states it will *advise* the creditor of two matters: 1) the debtor has ignored its collection efforts, and 2) legal action may be necessary to collect the bill. Obviously, neither of these two actions is illegal. Further, MAB did not state anything it did not intend to do. The key word is "advise." There was no threat to take legal action, but rather a statement that the client would be advised that legal action may be necessary. Thus, there was not a *per se* violation of § 1692e(5).

### Violation of § 1692e(10)

█ In determining whether a violation of section 1692e(10) has occurred the court must determine whether an unsophisticated person would find a debt collector's practices deceptive. *Jeter*, 760 F.2d at 1177; *Catherman v. Credit Bureau of Greater Harrisburg*, 634 F.Supp. 693, 695 (E.D.Pa. 1986). Section 1692e(10) prohibits "The use of any false representation or deceptive means to collect or attempt to collect any debt...." Referring once more to MAB's letter of December 11, 1986, plaintiff's position is that a material issue of fact exists as to what action MAB is threatening and when that action will be taken. Before deciding on the merits of plaintiff's claim under 15 U.S.C. § 1692e(10), we must determine whether this issue is ripe for summary judgment.

Summary judgment may be granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). The party seeking summary judgment bears the burden of establishing that no such dispute exists. *Gutwein v. Roche Laboratories*, 739 F.2d 93, 95 (2d Cir.1984). All ambiguities must be resolved and all inferences drawn in favor of the party against whom judgment is sought. *Patrick v. Le Fevre*, 745 F.2d 153, 158 (2d Cir.1984). When, as is the case here, a party moves for summary judgment, and documents its motion, setting forth specific facts denying the claims, the opposing party must set forth specific facts showing that there is a genuine issue for trial. *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Mere conclusory allegations or denials will not suffice. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983). Further, not all controversies present triable issues. *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 55 (2d Cir.1987). The court will not try issues of fact, but it will determine if there are issues to be tried. *Id.* at 58. In my view, this is a proper case for summary judgment.

Plaintiff contends that an issue of fact exists as to what is meant by "LEGAL ACTION MAY BE NECESSARY IN ORDER TO COLLECT THIS BIL (sic)." It is

clear to this court that this language is straightforward and no inference can be made which would constitute a triable issue of fact. Even an unsophisticated person would realize this statement to mean that because he has allowed his debt to remain unpaid, a suit may be brought to collect the amount owed.

■ The final question then is whether MAB's language violates 15 U.S.C. § 1692e(10). I find that MAB's letter of December 11, 1986 presents no false representation or deception because it contains subject matter which, even to an unsophisticated person, would be reasonably predictable. *Catherman*, 634 F.Supp. at 695–96. Thus, the defendant has not violated 15 U.S.C. § 1692e(10).

### *Damages*

■ MAB, by placing its validation notice on the reverse side of its debt collection letters, where the notice is of smaller type and printed in lighter ink than on the front of the letter and where no reference has been made to the notice on the face of the document, has violated 15 U.S.C. § 1692g. 15 U.S.C. § 1692k makes MAB liable to plaintiff for her actual damages, statutory damages not to exceed $1,000, attorney's fees and costs. Plaintiff has made no claim for actual damages but instead seeks statutory damages plus costs and attorneys fees. In determining these amounts, the court must consider MAB's actions including the frequency, persistence, and nature of its noncompliance, and whether such noncompliance was intentional. The validation clause in question appears on every debt collection letter sent out by MAB, as these are computer generated forms. While the facts demonstrate that MAB was aware of the law (as indicated by the validation notice itself being supplied), it is obvious to the court that MAB was intentionally circumventing the purpose of the Act by "hiding" the notice on the reverse of its form. Therefore, plaintiff is entitled to statutory damages in the amount of $1,000, plus costs and attorney's fees for violation of § 1692g.

Plaintiff will have fifteen (15) days within which to submit proof, consistent with Second Circuit authority, concerning costs and reasonable attorney fees. MAB will have ten (10) days after receipt of plaintiff's submissions to file any opposing evidence.

### *Conclusion*

Defendant, MAB's motion for summary judgment is denied in part and granted in part. Plaintiff's cross-motion for summary judgment is denied in part and granted in part. Summary judgment shall be granted in favor of defendant concerning plaintiff's claims for violation of 15 U.S.C. § 1692e(2)(A), (5) and (10). Plaintiff shall have judgment on its claim that MAB violated 15 U.S.C. § 1692g in the amount of $1,000. The court reserves decision on plaintiff's application for attorneys fees and costs pending receipt of additional evidence concerning reasonable attorneys fees.

SO ORDERED.