Anthony GRAZIANO, Plaintiff,

v.

Michael HARRISON, Defendant.

Civ. No. 90–1707(DRD).

United States District Court,
D. New Jersey.

Jan. 2, 1991.

Dawn K. Miller, UAW–GM Legal Services Plan, UAW–Ford Legal Services Plan, Woodbridge, N.J., for plaintiff.

Michael Harrison, pro se.

## OPINION

DEBEVOISE, District Judge.

Plaintiff Anthony Graziano brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, against defendant Michael Harrison for allegedly engaging in unlawful debt collection practices. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the undisputed record reveals no violations of the Act. Plaintiff has filed a cross-motion for partial summary judgment, asserting that the facts demonstrate violations of the Act and require judgment in plaintiff's favor on some of his claims.

## FACTS

Defendant Michael Harrison is an attorney admitted to the bar of the State of New Jersey and maintains a debt collection practice in the state. *See* Harrison Affidavit ¶ 2. A large portion of this practice is devoted to the collection of debts owed to "hospital-based physician groups". *Id.* On April 28, 1989, defendant sent plaintiff a form-letter collection notice for $80.00 allegedly owed to Valley Emergency Associates, P.A. That letter indicated that the amount stated was due on account number MVE03147489 [hereafter "Account 1"].[1]

A brief description of that letter is in order. The text of the letter reads as follows:

As you are aware, this office represents VALLEY EMERGENCY ASSOC P.A. Your account still remains unpaid in the amount of $80.00 for services rendered at VALLEY EMERGENCY ASSOC P.A. Therefore, be advised that if your account is not resolved within ten (10) days from the above date, this office will immediately institute suit against you without further notice.

Please note your account number and patient name on your check in order to insure proper credit.

Thank you for your anticipated cooperation.

*Id.,* Exhibit A; Complaint, Exhibit A. This text is printed in dot matrix type onto a printed form.

The form also states that the debtor should "See reverse side for information regarding your legal rights!" *Id.* This message is part of the printed form and is printed in darker, solid type though somewhat smaller in point size than the dot matrix printing. The statement of debtor's rights on the reverse side of the collection notice states:

Unless within 30 days after receipt of this letter, you formally dispute in writing the validity of the debt or any portion thereof, it will be assumed to be valid. If you dispute the debt or any portion thereof or request any information concerning the creditor, verification of the debt will be mailed to you along with the name and address of the creditor if different from the one providing the services. This is required under the Fair Debt Collection Practices Act.

The purpose of this communication is to collect the debt which is the subject of this letter. Any information obtained will be used for the purpose of collecting the debt.

Harrison Affidavit, Exhibit A; Complaint, Exhibit A. This statement of rights is legible and the only writing on the reverse side of the collection notice.

Defendant received a letter of representation from plaintiff's attorney dated May 11, 1989. That letter advised defendant that the debt for $80.00 should be regarded as disputed and demanded that defendant: (1) cease further direct communication with plaintiff, and (2) provide verification of the debt for $80.00. Harrison Affidavit, Exhibit B; Complaint, Exhibit B. Defendant obliged the second request by sending a

---

**1.** Defendant contends that this was the *second* letter sent to plaintiff with respect to this delinquent account. No copies of a first letter or records indicating that it was sent have been submitted for inclusion in the record. How-

ever, I do not regard the issue of whether the letter of April 28, 1989 was the first or second sent to plaintiff as material to the resolution of this case.

statement of account prepared by Valley Emergency Associates, P.A., dated May 16, 1989, showing an outstanding balance of $80.00. *See* Harrison Affidavit, Exhibits D and E; Complaint, Exhibit C. Plaintiff's attorney responded with a letter stating that the Statement of account was insufficient validation of the purported debt. Harrison Affidavit, Exhibit D; Complaint, Exhibit D. Defendant then forwarded a copy of a bill for services rendered by Valley Emergency Associates, P.A., in the amount of $80.00. Harrison Affidavit, Exhibit D. The final correspondence pertaining to this account was a statement of account dated August 8, 1989, showing that the balance due had been paid in full by check from an insurance carrier on July 27, 1989. Complaint, Exhibit F.

While defendant was preparing validation information on Account 1, he discovered that plaintiff had another delinquent account, Number MVE03083006, with a balance of $35.00 due for services rendered on May 27, 1988 [hereafter "Account 2"]. A bill and statement of account were sent to plaintiff's attorney along with the validation information on Account 1. Defendant never sent a collection notice to either plaintiff or his attorney with respect to Account 2. No further action was taken to collect on this account. Harrison Affidavit ¶ 9.

Defendant sent a second collection notice directly to plaintiff dated February 12, 1990, concerning a balance due of $20.00 on Valley Emergency Associates, P.A., account number MV303126130 [hereafter "Account 3"] for services rendered on April 12, 1988. Harrison Affidavit, Exhibit I; Complaint, Exhibit I. According to defendant, this account was referred to him by his client, Valley Emergency Associates, on February 7, 1990. Harrison Affidavit ¶ 10. Plaintiff received a third collection notice, also dated February 12, 1990, regarding $22.56 allegedly owed to Ridgewood Cardiology Associates on account number MVC03175066 [hereafter "Account 4"]. *See* Harrison Affidavit, Exhibit J; Complaint, Exhibit H. Defendant states that this Account was referred to him on February 9, 1990. Harrison Affidavit ¶ 10. The record reveals no subsequent communication from either plaintiff or defendant regarding either of these accounts. The format of these collection letters differed in two material respects from that on the notice sent on Account 1: (1) the statement on the front of the notice, informing debtors to look on the reverse side of the form for a statement of their rights and obligations, was printed in darker, larger block type than in the first notice form; and (2) the text of the letter did not threaten to immediately file suit if the debt was not resolved within ten days. The text of the letters sent to collect on Accounts 3 and 4 stated in pertinent part:

> Your account is long past due. It is, therefore, necessary that you promptly resolve this matter. Please note your account number and patient name on your check in order to insure proper credit.
>
> Thank you for your anticipated cooperation.

*See* Harrison Affidavit, Exhibits I and J. There were no further communications between the parties pertaining to these Accounts.

Plaintiff filed a Complaint with the Clerk of this Court on April 27, 1990. The Complaint alleged that defendant had violated the Fair Debt Collection Practices Act, 28 U.S.C. § 1692, *et seq.*, by: (1) failing to state that each communication was for the purpose of collecting a debt as required by 15 U.S.C. § 1692e(11); (2) failing to provide sufficient validation of the debts as required by 15 U.S.C. § 1692g; (3) falsely representing the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2); (4) failing to cease direct communication with plaintiff after receiving notification of representation by an attorney as required by 15 U.S.C. § 1692c(a)(2); (5) threatening action which was not intended to be taken in violation of 15 U.S.C. § 1692e(5); (6) threatening action which could not legally be taken in violation of 15 U.S.C. § 1692e(5); and (7) harassing, oppressing, or abusing plaintiff within the meaning of 15 U.S.C. § 1692d. Complaint ¶ 10. Plaintiff also claims that de-

fendant violated the Act by failing to stop all attempts to collect the debt after being notified that the debt was disputed as called for by 15 U.S.C. § 1692g(b).[2] Plaintiff requests statutory damages, actual damages and attorney's fees as compensation for these alleged violations of the Act pursuant to 15 U.S.C. § 1692k.

Defendant filed this motion for summary judgment on November 14, 1990, claiming he is entitled to judgment in his favor as a matter of law on all claims alleged in the Complaint. Plaintiff filed a cross-motion on November 26, 1990, for partial summary judgment on the seven claims enumerated above and on the issues of statutory damages and attorney's fees.

## DISCUSSION

Summary judgment must be granted where the moving party establishes that "there is no genuine issue as to any material fact and that ... [it] is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Once the moving party has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986), *rev'g* 723 F.2d 238 (3d Cir.1983). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *First Nat. Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968), *reh'g denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Sound Ship Bldg. Corp. v. Bethlehem Steel Co*, 533 F.2d 96, 99 (3d Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

The Supreme Court has explained that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. A disputed factual matter is a "genuine" issue if "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson v. Liberty Lobby, Inc.*, 475 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). Furthermore, all evidence must be viewed in a light most favorable to the nonmoving party. *Wahl v. Rexnord, Inc.*, 624 F.2d 1169, 1181 (3d Cir.1980). Finally, any inferences to be drawn from the underlying facts contained in [the movant's] materials must be viewed in the light most favorable to the party opposing the motion." *Whitehead v. St. Joe Lead Co., Inc.*, 729 F.2d 238, 251 (3d Cir.1984) (quoting *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969, 979 (3d Cir.1981)).

## I. THE SUFFICIENCY OF THE VALIDATION NOTICES

■ Several of plaintiff's claims allege that the validation statement of the debtor's rights and obligations contained on the back of the collection notices sent to plaintiff were not in compliance with the requirements of the Fair Debt Collection Practices Act. First, plaintiff argues that the statement does not constitute a validation notice as required under 15 U.S.C. § 1692g(a) and case law construing that section. Second, plaintiff claims that the statement fails to adequately disclose that the correspondence seeks to collect a debt and that any information gathered will be used to that end as required by 15 U.S.C. § 1692e(11). Both these arguments are predicated on the contention that the placement of the statement on the reverse of the correspondence renders notice of the debtor's rights unclear. This contention is completely devoid of merit.

■ The validation notice required by 15 U.S.C. § 1692g must "be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988) (citing *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir.1982)); and *see Jeter v. Credit Bureau, Inc.*, 760

---

**2.** This claim is not part of plaintiff's motion for partial summary judgment. However, defendant moves for summary judgment on all claims presented in the Complaint.

F.2d 1168, 1172–1175 (11th Cir.1985) (discussing the development and application of the "least sophisticated debtor" standard in considerable detail). The defendant's collection notices all contain clearly legible and clearly worded statements on the front side stating that a statement of legal rights is located on the back. While the print used in the collection letter on Account 1 is slightly smaller than that of the type used for the body of the letter, that print is bolder and more distinct on the page than the dot matrix type and it is prominently placed on the page; it is not obscured in any way or relegated to the fine print, never to be read. As described in the facts, the print on the front of the letters sent on Accounts 3 and 4 is even more visually striking.

The statement itself, contrary to plaintiff's contentions, is plainly legible and is the only writing on the reverse side of the letter. Furthermore, the second and final paragraph of the statement states clearly and explicitly that the letter is a debt collection notice. The statement of rights is thus sufficiently prominent, visually and verbally, to satisfy the requirements of 15 U.S.C. § 1692g and thus is adequate under 15 U.S.C. § 1692e(11) to inform the debtor that the purpose of the form letter was to collect a debt and that information obtained through communication would be used for that purpose.

Plaintiff relies on *Ost v. Collection Bureau, Inc.*, 493 F.Supp. 701 (D.N.D.1980), to argue that placing the validation notice on the reverse side of the collection form violates 15 U.S.C. § 1692g (and thus § 1692e(11)). This reliance is misplaced. Plaintiff has fundamentally misconstrued the holding of the case. *Ost* dealt with a debt collector whose collection notices contained the validation notice, informing debtors of their rights, on the back of the page. There the similarity between this case and *Ost* ends. The collection letters in *Ost* contained no notice on the front of the page indicating that a statement of the debtor's rights could be found on the back and presented a validation notice in print so small as to be "onerous" to read and which did not clearly address itself to the debtor.

493 F.Supp. at 703. The case clearly found the first factor to be pivotal in determining that there had been a violation of the Act. *See id.* at 702–703; *see also Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 176–177 (W.D.N.Y.1988) (debt collector violated Act, 15 U.S.C. § 1692g, when it "hid" the validation notice of debtors' rights by sending collection form notices that failed to state on front of page that validation notice was on back and the validation notice was in small print in light grey ink making reading difficult.). Each of these factors is lacking in the instant case. Therefore, the case law does not support the finding that defendant violated the Act by placing the validation notice on the back of the collection forms.

Nor does the validation notice contained on the back of the collection forms contain erroneous or deceptive language. Plaintiff claims that the language demanding that any dispute of a debt be made formally in writing places a burden on the debtor not contemplated by the statute and is therefore unlawful. Plaintiff also maintains that the fact that each collection notice contains the same validation notice informing the debtor of the thirty days time period to dispute the debt leads to confusion and is thus unlawful. Plaintiff contends that when the debtor receives collection letters containing identical validation notices subsequent to the initial letter, he or she will mistakenly believe that thirty days still remain to dispute the debt when the time limit actually begins to run from the receipt of the initial notice. These claims border on the frivolous.

■ First, while the Act does not specify the manner in which the debtor's decision to dispute a debt must be communicated to the collector, neither does it prohibit specifying a given manner. The purpose of the Fair Debt Collection Practices Act was to protect consumers from unfair, deceptive and harassing collection practices while leaving collectors free to employ efficient, reasonable and ethical practices in pursuit of their profession. *See Riveria,* 682 F.Supp. 174, 176 (discussing S.Rep. No. 95–382, 95th Cong., 1st Sess. 1 (1977)).

The demand that a debtor dispute a debt in writing is such an efficient, reasonable and ethical collection practice. The requirement of disputing a debt in writing benefits both the debtor and the collector. Each will have proof that the debt has been disputed, tending to prevent baseless claims by debt collectors asserting that a given debt must be deemed valid for failure to dispute it in timely fashion. The debt collector has a record for the files to increase administrative efficiency in the debt collection process and accuracy in the pursuit of those debtors who remain delinquent. I therefore conclude that the language requiring debtors to dispute alleged debts in writing did not violate Section 1692g of the Act.

■ The second claim, that including the same validation notice on all letters is sufficiently confusing to violate the Act, must fail with respect to the second and third collection letters. The record does not establish, and indeed conclusively establishes to the contrary, that plaintiff was sent successive collection notices on the same debt that might have resulted in confusion over the duration of the period in which a debt could be disputed. In a flaw that persists throughout plaintiff's papers, he seems to insist that each of the letters and bills sent by defendant pertain to the same debt. The record before me clearly indicates that they do not. Defendant sent plaintiff three collection letters containing the allegedly confusing and misleading validation notice. Each of these letters relate to different debts and different collection accounts. Hence, the second and third collection letters and accompanying validation notices gave plaintiff thirty days in which to dispute the newly demanded repayment of a debt distinct from those specified in defendant's earlier correspondence.

If plaintiff's claim suggests that sending multiple collection letters on multiple debts to the same debtor could cause some confusion on the debtor's part, this does not rise to the level of unfair or deceptive conduct the Act was meant to remedy.[3] Confusion would result simply from the debtor's inability to distinguish between the accounts (debts) reflected in the various collection letters. The law protects consumers from unfair practices by debt collectors, it does not protect them from the complexity of their own finances. Processing individual debts separately may be a simpler and less confusing way of handling multiple debts than some consolidation scheme. The debtor will be clearly apprised of how many separate debts are owed and their individual amounts; the debt collector will be spared more complicated processes in preparing collection letters and keeping the books for separate collection accounts.

I find that plaintiff's claims challenging the sufficiency of the validation notices contained in the second and third collection letters are without merit. Defendant is therefore entitled to summary judgment on these claims.

The validation notice contained in the April 28, 1989 collection letter (Defendant's Exhibit A), however, when taken together with the text of the letter leads to substantial confusion as to what the debtor's legal rights are. The body of the letter and the validation notice on the reverse side carry messages contradicting one another, the former that the debtor will be sued within ten days and the latter that the debtor has thirty days to dispute the debt. The effect is to confuse readers so that they fail to take legal action to protect their rights.

■ Defendant asserts that this letter was not an initial collection letter and that a collection letter identical to Defendant's Exhibits I and J was sent on March 23,

---

**3.** In fact, the text of the Act seems to point in the opposite direction. Section 1692h provides that where a debtor owes multiple debts and a payment is made, the payment cannot be put towards any debt disputed by the debtor. Thus, the section evinces a concern that treating debts as consolidated may well result in abuses by collectors and contemplates handling multiple debts of one debtor separately. The section does provided that the debt collector may apply the payment "in accordance with the debtor's directions", 15 U.S.C. § 1692h, but handling multiple debts as consolidated upon a debtor's instruction does not indicate how a debt collector should treat them initially.

1989. Harrison Affidavit ¶ 7. Defendant points to the date at the bottom of the letter, next to the symbol "DOS" which allegedly signifies that an initial collection letter was mailed on March 23, 1989. *Id.* As noted, defendant does not include any records of this initial letter having been sent but relies on the process of generating collection letters by computer to which his practice adheres. Defendant alleges that before a letter threatening a debtor with the immediate filing of a lawsuit if the debt is not resolved in ten days is sent, a collection letter identical to Exhibits I and J *must* be generated by his computer system. *Id.* at ¶ 8. Assuming the truth of this account, the letter sent to plaintiff on April 28, 1989 remains confusing because of the inclusion of the statutory validation notice on the back of the letter which directly conflicts with the threat to sue on the front. These contradictory statements would tend to lull or the unsuspecting debtor into ignoring the threat on the front to his legal detriment.

Defendant claims the incorporation of the validation notice was the result of a bona fide mistake by his office and exempt from liability under 15 U.S.C. § 1692k(c). The subsection reads:

> A debt collector may not be held liable in any action brought under [the Fair Debt Collection Practices Act] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).[4]

In order to come within the exception provided by Section 1692k(c), the debt collector must show that the violative act was unintentional *and* that it occurred despite the existence and operation of procedures reasonably expected to prevent such errors. Defendant contends that the validation notice appeared on the reverse side of the April 28, 1989 letter through a bona fide error. He states in his affidavit that his office had thrown out a large number of forms of various descriptions, including the form on which the letter in question was printed. Harrison Supplemental Affidavit ¶¶ 3–4, 6. Apparently, some of the old forms were inadvertently kept in the office and one somehow was used when the letter of April 28 was printed. *Id.* ¶ 7.

Even if this account is accepted as true, defendant still has not alleged facts sufficient to establish a bona fide error defense. Nowhere does defendant show that he had employed any procedures to prevent the occurrence of this sort of error. No review of letters before they are sent, no review of forms prior to the computer printing of the text of the collection letters is alleged. Throwing out the old form letters is not sufficient to constitute a procedure designed to avoid errors of this sort. *Cf. Id.* ¶ 8. First, a procedure is an ongoing process to detect, correct, and prevent errors, not merely an isolated, one-time action presumed to have accomplished an administrative goal. *See Gallegos v. Stokes,* 593 F.2d 372 (9th Cir.1979); *Mirabal v. General Motors Acceptance Corp.,* 537 F.2d 871 (7th Cir.1976) (both cases interpreting Subsection 1640(c) of the Truth in Lending Act); and *see Seabrook v. Onondaga Bureau of Medical Economics,* 705 F.Supp. 81, 87–88 (N.D.N.Y.1989) (citing *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864, 874 (D.N.D.1981)); *Carrigan,* 494 F.Supp. 824 (construing Section 1692k(c) of the Fair Debt Collection Practices Act). It is when such an action, such as disposing of the old forms, has been incorrectly performed that procedures designed to prevent errors come into play and show their effectiveness.

---

**4.** *See also* 15 U.S.C. § 1640(c), the bona fide error defense contained in the Truth in Lending Act. The provision exempts a creditor's conduct from liability if it can be shown "... by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error ..." 15 U.S.C. § 1640(c). Section 1640(c) and Section 1692k(c) are nearly identical in language and purpose and judicial interpretations of the former have been used to aid in construing the latter. *See Baker v. G.C. Services Corp.,* 677 F.2d 775, 779 (9th Cir.1982) (citing *Carrigan v. Central Adjustment Bureau, Inc.,* 494 F.Supp. 824, 827 (N.D.Ga.1980)).

Second, I note that the form used in the April 28 letter is almost identical to the form used in defendant's later initial collection letters such as Defendant's Exhibits I and J. The error committed therefore cannot be characterized as restricted to the accidental use of those forms that were to be thrown out with subsequent collection letters. The error of combining a threat to file suit with the statutory validation notice in the same collection letter could thus occur again at any time. Furthermore, defendant has stated that the form used for subsequent initial collection letters was and is used for the second and third collection letters as well. Harrison Supplemental Affidavit ¶ 5. Given the close similarity of the form used for the April 28, 1989 letter with the form used for subsequent initial collection letters, particularly with respect to the validation notice, the error at issue here may have been repeated regularly and would continue to occur in the future without the institution of corrective measures. Thus, an adequate procedure designed to prevent errors of this sort cannot consist of throwing out obsolete forms without any subsequent procedures to ensure that the letters mailed thereafter are in compliance with the Act.

■ Nonetheless, plaintiff's claim that the April 28, 1989, letter violates Section 1692g remains fatally flawed. If the inclusion of a validation notice in this letter violates the Act, the violation is of Section 1692e(10) which prohibits the use of false or deceptive statements in debt collection forms and not of Section 1692g which deals with validation notices.[5] The confusion that might plausibly result from the coupling of the threat to sue with the vali-

dation notice does not render the validation notice legally deficient. Rather, the trouble with the letter is that the validation notice is *clearly understood* and will thus distract the debtor's attention from the threat. Thus, no grounds for a claim under Section 1692g with respect to the letter of April 28, 1989, is presented on this record and defendant is entitled to summary judgment.

## II. THREATENING ACTION NOT INTENDED TO BE TAKEN OR WHICH CANNOT LEGALLY BE TAKEN

■ Plaintiff claims that the wording of defendant's first collection letter violates Section 1692e(5) by threatening to institute suit "immediately" if plaintiff failed to "resolve" his debts within ten days.[6] *See* Harrison Affidavit, Exhibit A.[7] Plaintiff argues that Section 1692g provides for thirty days in which to decide whether to dispute the debt and that defendant's threat to file a suit before the expiration of that time limit renders the actual bringing of an action in that time frame unlawful. Plaintiff also claims that this language threatens action that defendant never intended to take against plaintiff, as evidenced by defendant's failure to ever file suit against plaintiff. In effect, plaintiff alleges that defendant made these threats knowing that they could not and would not be acted upon.

Section 1692e(5) has been the subject of conflicting interpretation among the circuits. The Eleventh Circuit has interpreted the Section as not subject to the "least sophisticated consumer" standard applicable to the rest of the Act and instead as

---

**5.** Plaintiff cannot maintain an action under Section 1692e(10) at this time because he has not alleged a violation of this section of the Act at any point in this litigation. Even in the papers submitted in support of plaintiff's motion for partial summary judgment, plaintiff has steadfastly maintained that his claim is based on Section 1692g and has not advanced a theory of liability under Section 1692e(10).

**6.** Section 1692e states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

Without limiting the general application of the foregoing, the following conduct is a violation of this section:

 * * * * * *

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

16 U.S.C. § 1692e.

**7.** Plaintiff does not make a claim under 15 U.S.C. § 1692e(5) with respect to the wording of the two subsequent collection letters. *See* Harrison Affidavit, Exhibits J and K.

requiring only proof a defendant's intent to threaten a debtor in the prohibited manner. *See Jeter*, 760 F.2d 1168, 1175 (11th Cir. 1985). Under the Eleventh Circuit's analysis, "the jury has two tasks. First, it must ascertain the meaning of [the defendant's letters] to determine just what was threatened" and whether the defendant "intended to take such threatened action". *Id.* at 1176. In reviewing the first of these tasks, however, the Court applied a "reasonable jury" standard to determine whether something was "threatening". Unfortunately, the Court did not provide any justification for applying a "reasonable person" test rather than the least sophisticated debtor standard governing claims under the rest of Section 1692e. *See id.*

The Ninth Circuit has adopted the least sophisticated debtor standard for evaluating claims under Section 1692e(5). *See Swanson*, 869 F.2d 1222, 1226–27 (9th Cir. 1988). While the Court recognized the same two step process employed in *Jeter*, it concluded that the first step and "threshold question" required an "evaluation of the threat" using the least sophisticated debtor standard. *Id.* at 1226. The Court expressly declined to follow the Eleventh Circuit's rule, reasoning that:

> Even if the sophistication of the debtor is irrelevant to the question of the collector's intent, this does not answer the question whether a statement that arguably threatens to take action that cannot legally be taken should be viewed through the eyes of an unsophisticated debtor. In the latter context, the debtor's understanding of the communication is clearly relevant.

*Id.* at 1227.

The Third Circuit has not had the opportunity to rule upon this question, so this Court is not bound by either the *Swanson* or *Jeter* holdings. However, I will follow that interpretation which I regard as more consonant with the legislative policy underlying the Act. The Ninth Circuit's application of the least sophisticated debtor standard appears to be in greater harmony with the construction given to the remainder of Section 1692e and the statute as a whole,

more logically sound, and best suited to effect the purpose of the Act. The standard enunciated in *Swanson* will therefore be applied in this case.

Under the least sophisticated debtor standard, the message conveyed by the collection letter negates the statutory period and replaces it with a ten day period of defendant's own creation. *See Swanson*, 869 F.2d at 1226; *Ost*, 493 F.Supp. at 703; *cf. Jeter*, 760 F.2d at 1177 (employing least sophisticated debtor standard, threatening immediate legal action after five days a "deceptive" practice under 15 U.S.C. § 1692e(10)). The terms of the letter have a natural tendency to coerce the debtor to make a decision regarding payment of the debt without the time for deliberation afforded by the statute. *See Swanson*, 869 F.2d at 1226; *Ost*, 493 F.2d at 703. If suit was actually filed, that action would violate the rights guaranteed by the statute. The thirty day period would be rendered meaningless if debt collectors could modify it with the threat of suit and circumvent it by bringing an action before the debtor has fully availed himself of the time granted by statute to decide whether to pay the debt.

 While there can be little doubt that defendant's letter contained a threat under Section 1692e(5), the threatening language violates the statutory prohibition of threatening action that cannot be legally taken only if the letter was the initial collection letter that must provide notice of the thirty days to dispute the debt. The aspect of the threat that makes it violative of this portion of Section 1692e(5) is its tendency to nullify the statutorily required thirty day "waiting period" set forth in the validation statement.

Defendant argues, however, that the letter of April 28, 1989, was the *second* letter sent on Account 1, not the first. Harrison Affidavit ¶ 7. Furthermore, defendant asserts that the computer generated cycle of dunning letters leaves in excess of thirty days between mailing letters on an account. *Id.* ¶ 8. If this were so, the letter at issue would not have been received within the statutory thirty day time period and thus the threat stated therein would not

pose a danger of negating that time period. Defendant could therefore legally bring an action after the passage of ten days. Because defendant has alleged sufficient facts to support his contention that the April 28, 1989, letter was the second one sent on Account 1, defendant has raised a issue of material fact that precludes summary judgment on plaintiff's claim that defendant threatened action which could not be legally taken.

 This denial of summary judgment, however, does not terminate the inquiry into plaintiff's Section 1692e(5) claim. The alternative theory of liability under Section 1692e(5), that defendant threatened to take action he had no intention of taking, is ripe for summary judgment. Defendant's Memorandum in support of his motion for summary judgment alleged that he had, in fact, intended to file suit if plaintiff had not resolved the debt within the ten day period. *See* Defendant's Brief in Support of Motion for Summary Judgment at 6. He alleges that the only reason suit was not filed was that the account was paid. This explanation is blatantly specious. The collection letter is dated April 28, 1989; the account was not paid until July 27, 1989. This clearly shows that defendant was hardly firm in his resolve to file suit against plaintiff after the passage of ten days "without further notice". Accordingly, I find that defendant threatened an action against plaintiff that he had no intention of bringing in violation of 15 U.S.C. § 1692e(5). Summary judgment will therefore be granted in plaintiff's favor on his claim under Section 1692e(5).

### III. FAILURE TO CEASE DIRECT COMMUNICATION WITH PLAINTIFF

 For the same reasons that plaintiff cannot maintain a claim against defendant for deceiving him with multiple validation notices, plaintiff's claim that defendant violated Section 1692c(a)(2) of the Act by failing to cease direct communication with plaintiff once he had been notified that plaintiff had retained counsel cannot survive defendant's motion for summary judg-

ment. First, the communications pertain to three different debts which did not have to be consolidated with respect to the principal or in the communications directed to plaintiff. Defendant could lawfully send collection letters directly to plaintiff until he was informed that representation by plaintiff's counsel extended to the third and fourth debts. Plaintiff views this as a cramped and narrow reading of the statute. I disagree. The record shows that these debts were separately incurred and independently referred to defendant by the creditor. Furthermore, the letter of representation received by defendant did not state that he had retained counsel with respect to all subsequent debts that could potentially be forwarded to defendant for collection. That letter refers only to the single "debt collection communication" received by plaintiff on Account 1. *See* Harrison Affidavit, Exhibit B. Based on these facts, plaintiff's representation did not extend beyond the matter raised by defendant's first debt collection letter.

In addition, as stated above, the statute makes no provision for treating multiple debts as consolidated, nor would such an interpretation of the Act make sense. Consolidation of multiple debts may produce more confusion and abuses than it would correct. Moreover, the proposition for which plaintiff argues appears to regard debtors as wholly incompetent to determine whether they owe a debt or do not. Obviously, not all debts that are referred to debt collectors are disputed. If a debt collector sends the initial collection notice to the debtor, the person in the best position to decide whether it should be paid can evaluate the validity of the debt without encumbering the process with an attorney's involvement which might complicate matters and make the process of collecting or paying a debt more expensive and time consuming than necessary. Even the least sophisticated consumer can be expected to know what his or her legitimate debts are. I therefore conclude that defendant's sending of subsequent collection letters directly to plaintiff did not violate Section 1692c(a)(2) of the Act.

## IV. MISREPRESENTATION OF THE AMOUNTS OF PLAINTIFF'S DEBTS

■ Plaintiff has made a similar error in claiming that defendant repeatedly misstated the amount of the debt owed by plaintiff in violation of 15 U.S.C. § 1692e(2). Plaintiff claims all the correspondence involves a single debt account and thus the varying totals constitute an erroneous representation as to the amount of the debt. As stated above, the collection letters relate to several different debts. The amount claimed for each debt account has not been shown to be an incorrect statement of the balance due for each. In fact, plaintiff has not even claimed that the amounts defendant alleged to be due on these individual accounts are inaccurate. Therefore, plaintiff cannot maintain a claim that the amounts of his various debts have been misrepresented.

## V. FAILURE TO PROVIDE VERIFICATION OF DEBTS

■ Plaintiff claims that he was not provided with adequate verification of the debts defendant alleged were delinquent. Defendant's affidavits, however, state that the type of computer printouts supplied by defendant to plaintiff as verifications are routinely accepted by insurers to verify claims and are accepted by them as the basis for making payments. Furthermore, defendant states in affidavits that his clients have no "hard copy" of past billing information which is kept in computer files. Thus, a computer printout in one form or another is the only printed verification available. *See* Affidavit of Mary Lu Callaghan ¶ 8. I find that the printed information provided to plaintiff was sufficient to verify the debts at issue. Therefore, no violation of the Act occurred in this respect and summary judgment in defendant's favor is appropriate.

## VI. CLAIMS OF HARASSMENT OR ABUSE

■ Plaintiff claims that defendant's repeated communications caused him substantial anguish and emotional injury and rises to the level of harassment or abuse prohibited by Section 1692d of the Act. The only communication that could arguably be considered abusive or harassing is the first collection letter containing the threat to file suit. All the other letters sent to plaintiff by defendant were reserved and respectful in tone. I do not find the first collection letter constitutes harassment or abuse as a matter of law. Sections 1692d and 1692e(5) serve to remedy different forms of unethical debt collection practices. To constitute a violation of Section 1692d, the letters must contain "language the natural consequence of which is to abuse the ... reader." 15 U.S.C. § 1692d(2). In *Jeter*, the Court held that Section 1692d(2) was "meant to deter offensive language which is at least akin to profanity or obscenity." 760 F.2d at 1178. As defendant's "letters contained no personal comments directed towards" plaintiff, the language contained therein is not in violation of 15 U.S.C. § 1692d(2). *Id.* While the Section does contain a "catch all" provision to allow courts to prevent improper conduct not explicitly enumerated within it, I will follow the Eleventh Circuit's conclusion in *Jeter* where the Court adopted the district court's finding that threatening suit "would not oppress or harass a *reasonable* consumer." 760 F.2d at 1179.[8] Defendant's letter to plaintiff did not violate Section 1692d and summary judgment will be granted in defendant's favor on this claim.

## VII. CLAIMS FOR DAMAGES AND FEES

■ Plaintiff moves for statutory damages under Section 1692k of the Act. The Section provides for the award of "actual damages" and "such additional damages as

---

**8.** The Court applied the reasonable debtor standard which took into account the specific circumstances in which the debtor found himself; thus a "subjective" element enters into the determination of whether certain language constitutes abuse. However, the law does not encourage people to become thin-skinned. Thus, the courts must "structure the confines of § 1692d", making disposition of claims such as this on summary judgment a favored course. *See id.*

the court may allow, but not exceeding $1,000." 15 U.S.C. §§ 1692k(a)(1) and (a)(2)(A). In addition, both plaintiff and defendant move for fees pursuant to Section 1692k. *See Hardin v. Folger,* 704 F.Supp. 355, 356 (W.D.N.Y.1988) (citing *Leatherwood v. Universal Business Service Co.,* 115 F.R.D. 48 (W.D.N.Y.1987)). First, since plaintiff has failed to move for or prove any actual damages, none will be awarded. Second, the award of additional statutory damages and attorney's fees is left to the court's discretion and in this case I will make an award in the nominal amount of $50.00. While defendant has been found to have violated the Act on one claim advanced by plaintiff, the bulk of the Complaint is utterly without merit. Defendant has been punished and chastened by waging a defense to a suit containing such a large number of meritless claims. Furthermore, I do not find the defendant's conduct to be so flagrant in its violation of the statute that more than minimal damages are warranted.

Attorney's fees will not be awarded to plaintiff for the same reason; plaintiff does not appear to have been subjected to any egregious conduct which calls for a special, discretionary remedy. Fees should not be awarded to a plaintiff who has filed claims clearly having no merit. On the other hand, defendant's request for attorney's fees will not be granted because there was in fact a violation of the Act.

### CONCLUSION

For the foregoing reasons defendant's motion for summary judgment is granted as to plaintiff's claims under 15 U.S.C. §§ 1692c(a)(2), d, e(11), e(2), and g. Plaintiff's motion for partial summary judgment is granted as to his claims under 15 U.S.C. § 1692e(5). Plaintiff's motion for statutory damages pursuant to 15 U.S.C. § 1692k(a)(2) is granted and fifty ($50.00) is hereby awarded. The motions by both parties for attorney's fees pursuant to 15 U.S.C. § 1692k are denied.